## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH SEVERA; | : |
| | : |
| CAROL BINCK; | : |
| | : |
| EDWARD LASTOWKA and SUZETTE | : |
| LASTOWKA; and | : |
| | : |
| WILLIAM TETI, | :  Civil Action No.: |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| SOLVAY SPECIALTY POLYMERS, | : |
| USA, LLC; SOLVAY SOLEXIS, INC.; | : |
| And ARKEMA, INC. | : |
| | : |
| Defendants. | : |
| | : |

## COMPLAINT

Plaintiffs, individually and on behalf of the putative classes of similarly situated persons defined herein, file this Class Action Complaint against defendants Solvay Specialty Polymers, USA, LLC, and Arkema, Inc., (collectively "Defendants") and allege as follows:

I.     **INTRODUCTION**

1.  Residents of National Park, New Jersey, received their drinking water the National Park Water Department, a municipal water utility.  Although unknown to them, for years – and confirmed since 2019 – the water supplied to residents by the National Park Water Department is contaminated with PFNA, the source of which is the nearby plant currently owned and operated by defendant Solvay, and formerly owned and operated by Arkema.  When ingested, PFNA can cause numerous and serious adverse health outcomes.

1

## II.      PARTIES

2. Plaintiff Kenneth Severa is an adult citizen of the State of New Jersey domiciled at 811 Lakehurst Avenue, National Park, NJ 08063.

3. Plaintiff Carol Binck is an adult citizen of the State of New Jersey domiciled at 807 Lakehurst Avenue, National Park, NJ 08063.

4. Plaintiff Edward Lastowka is an adult citizen of the State of New Jersey domiciled at 817 Lakehurst Avenue, National Park, NJ 08063.

5. Plaintiff Suzette Lastowka is an adult citizen of the State of New Jersey domiciled at 817 Lakehurst Avenue, National Park, NJ 08063.

6. Plaintiff William Teti is an adult citizen of the State of New Jersey domiciled at 107 East Military Drive, National Park, NJ 08063.

7. Defendant Solvay Specialty Polymers, USA, LLC ("Solvay USA") is a Delaware corporation with its principal place of business in Houston, TX.

8. Defendant Solvay Solexis, Inc. ("Solvay Solexis") is the predecessor of Solvay USA and was a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.

9. Defendants Solvay USA and Solvay Solexis will collectively be referred hereinafter as "Solvay".

10. Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 2000 Market Street, Philadelphia, Pennsylvania 19103.

## III.      JURISDICTION AND VENUE

11. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff classes are citizens of states different

from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant Solvay conducts substantial business in this District, and both Defendants have caused harm to class members residing in this District. Plaintiffs also reside in this District.

## IV.   ALLEGATIONS OF FACT

### a.   GENERAL FACTUAL ALLEGATIONS

13. Mr. Severa owns and resides at the property located at 811 Lakehurst Avenue, National Park, NJ 08063.

14. Mr. Severa is a customer of the National Park Water Department, which provides water utility services to his property.

15. Ms. Binck owns and resides at the property located at 807 Lakehurst Avenue, National Park, NJ 08063.

16. Ms. Binck is a customer of the National Park Water Department, which provides water utility services to her property.

17. Mr. and Mrs. Lastowka own and reside at the property located at 817 Lakehurst Avenue, National Park, NJ 08063.

18. Mr. and Mrs. Lastowka are customers of the National Park Water Department, which provides water utility services to their property.

19. Mr. Teti owns and resides at the property located at 107 East Military Drive, National Park, NJ 08063.

20. Mr. Teti is a customer of the National Park Water Department, which provides water utility services to his property.

21. Solvay operates a plant ("the plant") located at located at 10 Leonard Lane, West Deptford, New Jersey 08086.

22. Arkema is the corporate successor to the entities, Pennwalt, and Elf, that owned and operated the plant until 1990.

23. The Plant was sold to Ausimont USA in 1990, and in 2002 Solvay acquired Ausimont.

24. The plant encompasses 243 acres and is known to be contaminated with PFNA.

25. Solvay and Arkema have maintained exclusive control over the plant at all relevant times.

26. Per-fluoronated acids ("PFAs") such as PFNA have been used at the plant since the 1970s to produce PDVF resin. Solvay and its predecessors continued to use PFAs, including PFOA as well as other long carbon-chain PFAs, to produce PVDF at the site until 2010, at which time the use of PFAs was phased out pursuant to an agreement with the EPA.

27. Several metric tons of PFNA and other PFAs were emitted yearly at the plant for well over a decade.

28. In 2002, the plant was the second-highest-capacity plant in the world (behind only a facility in Calvert City, Kentucky) in terms of quantities of PFNA used as a processing aid for the PVDF emulsion process.

29. Data provided to the NJDEP about PFA use at the plant indicate that 86.6% of the 125,069 kg of Surflon S-111 PFA mixture (which is primarily PFNA) used between 1991 and 2010 was released into the environment (i.e., the surrounding air and water).

30. PFNA used and discharged at the plant by defendant(s) from 1988 to 2010 have been detected in high concentrations in the drinking water for National Park.

31. Defendant(s) improperly disposed of PFNA, PFOA and other PFAs on the actual plant site, contaminating the groundwater immediately beneath the plant, which is the source of the water used by the National Park Water Department for its drinking water.

32. Despite knowledge since at least the late 1970s that humans exposed to perfluorochemicals, including PFOA and PFNA, would accumulate elevated levels of these chemicals in their blood, and despite knowledge since at least 2004 that exposure to even part-per-trillion levels of PFOA in community drinking water could result in significantly elevated levels of such chemicals in blood of the general population drinking water, defendant(s) did nothing to abate their pollution, warn the community or test the residents for exposure.

33. Once released, PFNA and other PFAs are persistent in the environment.

34. PFNA and other PFAs are not known to ever break down in water, soil, air, or the human body.

35. Defendant(s)' improper disposal consisted in part of dumping the PFNA and other PFAs into the sewer system – a process which defendant(s) knew or should have known would result in the discharge of the PFNA and other PFAs into the environment.

36. Defendant(s) also discharged these chemicals directly into the environment, where they are subject to atmospheric dispersion and eventual deposition associated with the prevailing wind patterns. This dispersion and deposition results in human exposure both on-site and off-site of the plant.

37. Arkema and Solvay are knowledgeable about the characteristics and health hazards of PFNA and other PFAs.

38. Defendants' discharge of PFNA has also contaminated the water of nearby Paulsboro, New Jersey.

39. Another compound used at the plant, PFUnA, have been observed in Delaware River fish.

40. The EPA and NJDEP have concluded that PFNA has a toxicity profile similar to that of the closely related compound PFOA. However, the EPA and NJDEP concluded that PFNA is generally more toxic and more biologically persistent than PFOA. PFNA and other PFAs are associated with increased risk in humans of testicular cancer, kidney cancer, prostate cancer, non-Hodgkin's lymphoma, pancreatic cancer and ovarian cancer, as well as thyroid disease, high cholesterol, high uric acid levels, elevated liver enzymes, ulcerative colitis, and pregnancy-induced hypertension, as well as other conditions. Epidemiological studies of exposure in animals has shown the ability to cause other diseases and cancers not yet associated with human exposure. Exposure may result in developmental effects to fetuses during pregnancy or to breastfed infants, liver damage, and various immunological effects.

41. PFNA and other PFAs persist and bioaccumulate in humans, such that comparatively low exposures such as suffered by plaintiff(s) and class members may result in large body burdens persisting for years.

42. There is a causal link between exposure to PFNA, and other PFAs, and subclinical or subcellular injury and/or serious latent human disease.

43. In 2018, New Jersey established an MCL for PFNA of 13 ppt, and required water utilities to begin testing for PFNA in their water beginning in the first quarter of 2019.

44. Since an effective date of January 22, 2020, National Park has been subject to an enforcement action by New Jersey Department of Environmental Protection ("NJDEP") for violating the MCL for PFNA in samples taken from its treatment plant.

45. According to NJDEP, samples taken from the National Park Water Department treatment plant exceeded New Jersey's Maximum Contaminant Level ("MCL") of 13 parts per trillion for the time periods October 1, 2019 through December 31, 2019, and January 1, 2020 through March 31, 2020, in violation of N.J.A.C. 7:10-5.5(2)a5.

46. Since at least April 2019, and each quarter thereafter continuing to today, National Park Water Department has notified its customers that its water is contaminated with PFNA at levels above the MCL.

47. Specifically, National Park Water Department has detected PFNA at levels above the MCL in each quarter beginning with the second quarter of 2019 and continuing to today:

> 2nd Quarter 2019: 16 ppt
> 3d Quarter 2019: 18.5 ppt
> 4th Quarter 2019: 13.5 ppt
> 1st Quarter 2020: 21.4 ppt
> Running Annual Average: 17 ppt

48. National Park Water Department has advised its customers to purchase NSF-certified carbon filtration systems at their own cost.

49. Water filtration systems are reasonable and necessary to abate the contamination of PFNA in the water.

50. Locating and purchasing water for drinking, cooking, cleaning, and other uses are additional reasonable and necessary responses to the contamination when such filtration is not available.

51. Although Plaintiffs and the classes were not made aware that their drinking water was contaminated by PFNA until 2019, the existence of the contamination extends much further back in time.

52. Data provided to the New Jersey Department of Environmental Protection ("DEP") about PFA use at the Facility indicate that 86.6% of the 125,069 kg of Surflon S-111 PFA mixture (which is primarily PFNA) used between 1991 and 2010 was released into the environment (i.e., the surrounding air and water).

53. The Plant's on-site monitoring wells show the groundwater to be contaminated by PFAs at levels as high as 48.2 ppb on site, and from 2.68 to 26.8 ppb offsite. When compared to DEP's interim proposed guidance level of .02 ppb, this data shows that Defendants heavily contaminated the aquifer with PFNA and other PFAs in use at the Facility.

54. As early as 2009, DEP detected PFNA in well water in nearby Paulsboro, NJ.

55. Solvay is currently considered by NJDEP a "responsible party," responsible for PFNA contamination, and has charged it with operating and maintaining Point of Entry Treatment systems throughout the State.

56. The plant is the only place in southern New Jersey or Southeastern Pennsylvania that utilized PFNA in manufacturing.

### b. CLASS ACTION ALLEGATIONS

57. Plaintiff incorporates the foregoing paragraphs as if each were set forth fully herein.

58. Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3). This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of those

provisions.

59. Plaintiffs bring this class action on behalf of the following classes, as set forth below:

<u>Municipal Water Property Damage Class</u>
All individuals who, as of January 1, 2019, are or were owners of real property located in National Park, New Jersey, and who receive or received their drinking water from the National Park Water Department.

<u>Municipal Water Nuisance Class</u>
All individuals who, as of the time a class is certified in this case, are owners or lessors of real property located in National Park, New Jersey who receive their drinking water from the National Park Water Department.

<u>Biomonitoring Class</u>
All individuals who resided in National Park, New Jersey for any period of time from January 1, 2019 to the time a class is certified in this case, who have ingested PFNA-contaminated water from the water supplied by the National Park Water Department.

60. All Plaintiffs seek to represent all subclasses.

61. Excluded from the classes set forth above are: (a) Defendants, any entity or division in

which Defendants have a controlling interest, and their legal representatives, officers,

directors, assigns, and successors; (b) the Judge to whom this case is assigned and the

Judge's staff; (c) any class counsel or their immediate family members; (d) any State or

any of its agencies; (e) National Park, New Jersey and its Water Department, and (f) any

individual who otherwise would be included under one or more of the class descriptions

above but who has filed a lawsuit for personal injury for a PFNA-related illness related to

exposure to municipal or private well water.

62. Plaintiffs reserve the right to amend the class definitions set forth above if discovery

and/or further investigation reveals that any class should be expanded, divided into

subclasses, or modified in any way.

**Numerosity**

63. There are approximately 3,000 people residing in approximately 1,000 households in National Park, New Jersey.

64. All or nearly all of the residents of National Park rely on the National Park Water Department for the provision of water and sewer services.

65. Upon information and belief, there are no households in National Park that draw drinking water from private wells.

66. Each of the classes set forth above is sufficiently numerous to warrant class treatment, and the disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court.

67. Further, class members are readily identifiable from publicly available information regarding property ownership and/or residential history.

**Typicality**

68. Plaintiffs' claims are typical of the claims of the classes in that Plaintiffs, like all class members, are owners or lessors of real property that have experienced a diminution in value and/or nuisance due to the actions of the Defendants. Further, Plaintiffs, like the Biomonitoring Class, have been exposed to and ingested drinking water contaminated with PFNA. Plaintiffs and the Biomonitoring class are at significant risk of developing medical conditions associated with exposure to PFNA.

69. Moreover, the factual bases of Defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all members of the classes.

**Adequate Representation**

70. Plaintiffs will fairly and adequately represent and protect the interests of the classes. Plaintiffs have retained counsel with substantial experience litigating both environmental torts and class actions, including actions, like this one, representing putative classes whose property has been devalued by the actions of a polluter and/or who have been exposed to dangerous chemicals and are in need of biomonitoring.

71. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the classes and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to the classes.

**Predominance of Common Questions**

72. Plaintiffs bring this action under Rule 23(b)(3) because there are numerous questions of law and fact common to Plaintiffs and the class members that predominate over any question affecting only individual class members. The answers to these common questions will advance resolution of the litigation as to all class members. These common legal and factual issues include:

   a. Whether Defendants owed a duty to Plaintiffs and members of the classes to refrain from conduct reasonably likely to cause contamination of class members' drinking water;

   b. Whether Defendants knew or should have known that it was unreasonably dangerous to dispose of PFNA into the environment;

   c. Whether Defendants knew or should have known that disposing of PFNA in the manner alleged herein was reasonably likely to cause contamination of class members' drinking water;

d.  Whether Defendants breached a legal duty to Plaintiffs and the classes by disposing of PFNA in the manner described herein;

e.  Whether Defendants' breach of a legal duty caused class members' drinking water to become contaminated with PFNA;

f.  Whether it was foreseeable that Defendants' use of PFNA would cause class members' drinking water to become contaminated and/or unreasonably dangerous for normal and foreseeable human consumption or use;

g.  Whether the PFNA contamination described herein substantially interfered with Plaintiffs' and class members' use and enjoyment of their property;

h.  Whether the PFNA contamination described herein caused, and continues to cause, a continuous invasion of the property rights of Plaintiffs and the classes;

i.  Whether plaintiff and the biomonitoring class are entitled to biomonitoring relief such as blood testing;

j.  Whether Solvay and Arkema are liable to plaintiff(s) and the class for damages proximately caused by a continuing trespass of their property.

k.  Whether Solvay and Arkema are liable to plaintiff(s) and the class for damages proximately caused by their creation of a public nuisance.

l.  Whether Solvay and Arkema are liable to plaintiff(s) and the class for damages proximately caused by their negligence.

m.  Whether Solvay and Arkema committed a battery against plaintiff(s) and the class and therefore, whether Solvay and Arkema are thereby liable for compensatory relief.

12

n.   Whether Solvay and Arkema are liable to plaintiff(s) and the class for punitive damages.

o.   Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

### Superiority

73. Plaintiffs and members of the classes have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

74. Absent a class action, most class members would likely find the cost of litigating their claims to be prohibitively high and, therefore, would have no effective remedy at law.

75. Further, without class litigation, class members will continue to incur damages.

76. Class treatment of common questions of law and fact will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

### Rule 23(b)(2) Injunctive or Declaratory Relief

77. In addition to the above, Plaintiffs bring this class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the classes, such that final injunctive relief or declaratory relief is appropriate with respect to each class as a whole. Such injunctive relief includes, but is not limited to, an injunction to require a biomonitoring program sufficient to monitor class members' health to ensure they are adequately protected from the deleterious effects of PFNA on the human body, or, in the alternative, an program to determine the extent of exposure to PFNA, and an

order requiring Defendants to institute remedial measures sufficient to permanently prevent PFNA from contaminating class members' drinking water and/or properties.

78. Accordingly, Plaintiffs seek an injunction requiring Defendants to implement a biomonitoring program to aid the Biomonitoring Class and to institute remedial measures to prevent further PFNA contamination of class members' drinking water and properties.

79. Finally, Plaintiffs and the classes seek a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the classes.

## **Rule 23(c)(4) Certification of Particular Issues**

80. In addition to the above, Plaintiffs bring this class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the classes, such that final injunctive relief or declaratory relief is appropriate with respect to each class as a whole. Such injunctive relief includes, but is not limited to, an injunction to require a biomonitoring program sufficient to identify the extent class members' exposure to PFNA to ensure they are adequately protected from the deleterious effects of PFNA on the human body, and an order requiring Defendants to institute remedial measures sufficient to permanently prevent PFNAs from contaminating class members' drinking water and/or properties.

81. Accordingly, Plaintiffs seek an injunction requiring Defendants to implement a biomonitoring program to aid the Biomonitoring Class and to institute remedial measures to prevent further PFNA contamination of class members' drinking water and properties.

82. Finally, Plaintiffs and the classes seek a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the classes.

### Rule 23(c)(4) Certification of Particular Issues

83. In the alternative to certification under Rule 23(b)(2) or 23(b)(3), Plaintiffs and the classes seek to maintain a class action with respect to particular issues under Rule 23(c)(4).

84. Specifically, the liability of each Defendant, or the Defendants jointly, is suitable for issue certification under Rule 23(c)(4).

## V.      CAUSES OF ACTION

### COUNT ONE
### Public Nuisance

85.  Plaintiffs and the class incorporate each of the foregoing paragraphs as if set forth fully herein.

86. This claim is brought under New Jersey law on behalf of plaintiffs and the Municipal Water Property Damage and Nuisance classes.

87. Solvay's and Arkema's acts and omissions with respect to the releases of PFNA, PFOA and one or more other PFAs caused and/or continue to cause a significant, material, substantial and/or unreasonable interference with rights common to the general public including the public health, safety, peace, comfort, convenience and/or the public right to clean water, unlawfully hurting and/or inconveniencing an indefinite number of person, constituting a continuing public nuisance.

88. As set forth more fully hereinabove, PFNA at the levels detected in the National Park water supply, from at least 2019 to present, render the water unpotable and harmful for human consumption.

89. Defendant's contamination of the water in the National Park Water Department's supply negatively affects an entire municipality of approximately 3,000 people.

90. Defendants' discharges of PFNA, which have resulted in the contamination of the water provided to an entire community of approximately 3,000, were in violation of New Jersey's environmental laws, including but not limited to the Spill Act (N.J.S.A. 58:10-23.11, et seq.); the Water Pollution Control Act (N.J.S.A. 58:10A-1, et seq.); the Solid Waste Management Act (N.J.S.A. 13:1E-9, et seq.); and the Air Pollution Control Act (N.J.S.A. 26:2C-1, et seq.).

91. Plaintiff(s) and class members have suffered a special injury from the general public as PFNA is not a naturally occurring compound and could only be found in the National Park Water Supply as a result of human-caused contamination.

92. Solvay's and Arkema's acts and omissions causing a continuing public nuisance caused and/or continues to cause a significant, material, substantial, and/or unreasonable interference with rights peculiar to and common to plaintiff(s) and other class members causing special injury to plaintiff(s) and other class members, including, but not limited to, intrusion into plaintiff(s)' and other class members' homes and bodies, rendering plaintiff(s)' and other class members' water supply unfit for domestic purposes and human consumption and placing plaintiff(s) and other class members at an increased risk of developing serious latent diseases, for which Solvay and Arkema are liable.

93.  Plaintiff(s) and other class members have standing to seek injunctive relief to abate this public nuisance and to require Solvay and Arkema to implement all reasonable measures to eliminate and/or mitigate this continuing public nuisance, including identifying and eliminating any other PFAs from the water supply.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants and enter an order directing defendants to abate the public nuisance, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT TWO**
**Private Nuisance**

94. Plaintiffs and the class incorporate each of the foregoing paragraphs as if set forth fully herein.

95. This claim is brought under New Jersey law on behalf of plaintiffs and the Municipal Water Property Damage and Nuisance classes.

96. Defendants, through the negligent, reckless, and/or intentional acts and omissions alleged herein, have contaminated the municipal drinking water system of National Park New Jersey.

97. The drinking water system of National Park New Jersey transports contaminated water into the homes of plaintiffs and class members through pipes and plumbing facilities and fixtures in the homes of plaintiffs and class members.

98. The foregoing causes dispersion of PFNA and other PFAs throughout their properties.

99. The contamination of class members' drinking water, and its transportation into their homes in the form of contaminated water, has interfered with the rights of Plaintiffs and the classes to use and enjoy their property. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and the classes to, inter alia, refrain from

using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense. Defendants' conduct has also substantially interfered with class members' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that each class member so chooses.

100.     Defendants' negligent, reckless, and/or intentional acts and omissions were unreasonable and constitute a continuous invasion of the property rights of Plaintiffs and the classes.

101.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs and the classes have incurred, and will continue to incur, costs and expenses related to the investigation, treatment, remediation, and monitoring of drinking water and the contamination of their respective properties, as well as the damages set forth below.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, appropriate biomonitoring, and all such other relief as the Court deems proper.

## COUNT THREE
### Trespass

102.     Plaintiffs and the class incorporate each of the foregoing paragraphs as if set forth fully herein.

103.     This claim is brought under New Jersey law on behalf of plaintiffs and the Municipal Water Property Damage class, each of whom are owners of real property with the right of possession.

104.     A Solvay's and Arkema's knew that its improper disposal of PFNA and other

PFAs would result in the eventual contamination of the environment, aquifers and the

people who drink the water from those aquifers.

105.     Defendants, through the negligent, reckless, and/or intentional acts and omissions

alleged herein, have contaminated the municipal drinking water system of National Park

New Jersey.

106.     The drinking water system of National Park New Jersey transports contaminated

water into the homes of plaintiffs and class members through pipes and plumbing

facilities and fixtures, and into properties owned by plaintiffs and class members.

107.     Defendants negligently, recklessly, and/or intentionally failed to properly control,

apply, use, and/or dispose of PFNA and other PFAs and/or other waste containing PFNA

and other PFAs and PFNA and other PFA vapors discharged from the stacks at the Plant,

such that defendants  proximately caused PFNA and/or other PFA contamination  to

enter, invade, intrude,  upon and injure the rights of Plaintiffs and the class members to

use, possess, and enjoy their property.

108.     Prior to January 2019, the Plaintiffs and class members were unaware that the

Defendant's PFNA and other PFAs were on their property or in their water supply.

109.     The Plaintiffs and class members have never consented to Defendant's PFNA and

other PFAs being on their property or in their water supply.

110.     At no time have the Defendants sought permission from the Plaintiffs or class

members to deposit PFNA or other PFAs on their property or in their water supply.

111.     Solvay's and Arkema's intentional acts and/or omissions have resulted and/or

continue to result in the unlawful release and/or threatened release of PFNA and one or

more other PFAs at, under onto, and/or into Plaintiff(s)' and the other class members' bodies and/or lawfully possessed properties.

112.     The PFNA and other PFAs present on plaintiff(s)' and the other class members' properties and/or in their bodies originating from the plant were, at all relevant times hereto and to continue to be, the property of Solvay and Arkema.

113.     The invasion and presence of the PFNA other PFAs at, under, onto and/or into plaintiff(s)' and the other class members' properties and/or bodies were and continue to be without permission or authority from plaintiff(s) or any of the other class members or anyone who could grant such permission or authority.

114.     The presence and continuing presence of PFNA, PFOA and one or more other PFAs in plaintiff(s)' and the other class members' properties and/or bodies constitute a continuing trespass.

115.     Solvay's and Arkema's past and continuing trespass upon plaintiff(s)' and other class members' properties and/or bodies has proximately caused and/or continues to proximately cause damage to plaintiff(s) and other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFNA and other PFAs and/or sub-cellular damage), emotional distress and/or property damage, for which Solvay is liable, including, with respect to members of the biomonitoring subclass, liability for all appropriate medical testing to determine the extent and character of exposure to PFNA and other PFAs.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, appropriate biomonitoring, and all such other relief as the Court deems proper.

## COUNT FOUR
### Negligence

116.     Plaintiffs and the class incorporate each of the foregoing paragraphs as if set forth fully herein.

117.     This claim is brought under New Jersey law on behalf of plaintiffs and all classes.

118.     In connection with its operation of the plant, Solvay and Arkema had and continues to have a duty to operate and manage the plant and its related wastes in such a way as to not create a nuisance or condition causing any injury or damage to human health or the environment.

119.     Solvay and Arkema breached its duty of care by negligent operation and managing the plant and conducting other operations and activities at the plant in such a manner as to negligently cause, permit, and/or allow the release of PFNA and other PFAs into the environment, thereby contaminating plaintiff(s)' drinking water and that of the other class members.

120.     Their negligent acts and omissions proximately caused and continue to proximately cause damage to plaintiff(s) and other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFNA and other PFAs and/or sub-cellular damage) and property damage, in addition to creating conditions that are harmful to human health and the environment, for which Solvay and Arkema are liable, including liability for all appropriate medical monitoring of plaintiff(s) and the other class members.

121.     Their negligent acts and omissions proximately caused and continue to proximately cause damage to plaintiff(s) and other class members in the form of their payment and purchase of contaminated drinking water via PFNA and other PFAs.

122.     Their negligent acts and omissions proximately caused and continue to proximately cause damage to plaintiff(s) and other class members in the form of property damage - specifically contaminated drinking water pipes in their homes via PFNA and other PFAs.

123.     As proximate result of the aforesaid acts and omissions, Solvay and Arkema and those acting for and on their behalf and as agents, ostensible agents, employees, conspirators and joint ventures of others, contaminated the environment with PFNA, PFOA and one or more other PFAs, which were consumed by plaintiff(s) and the class that plaintiff(s) seek to represent and plaintiff(s) and other class members were injured as herein alleged.

124.     The aforesaid acts and omissions of Solvay and Arkema were negligent and as a proximate result, plaintiff(s) and the class members have suffered and/or will in the future suffer damage in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFNA, PFOA and/or sub-cellular damage), emotional distress, and/or property damage of a type special and common to members of the class but not common to the general public, for which Solvay and Arkema are liable, including, with respect to members of the biomonitoring subclass, liability for all appropriate medical testing to determine the extent and character of exposure to PFNA and other PFAs.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, appropriate biomonitoring, and all such other relief as the Court deems proper.

## COUNT FIVE
## NEW JERSEY SPILL ACT

125.     Plaintiffs and the class incorporate each of the foregoing paragraphs as if set forth fully herein.

126.     This claim is brought under New Jersey law on behalf of plaintiffs and all classes.

127.     Defendant Solvay is a "person" within the meaning of N.J.S.A. § 58:10-23.11b.

128.     Defendant Arkema is a "person" within the meaning of N.J.S.A. § 58:10-23.11b.

129.     The discharge of hazardous substances is prohibited pursuant to N.J.S.A. § 58:10-23.11c.

130.     The contaminants discharged from the plant are hazardous substances as defined by N.J.S.A. § 58:10-23.11b.

131.     A person who has discharged a hazardous substance or is in any way responsible for any hazardous substance, shall be strictly liable, jointly, and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred. N.J.S.A. § 58:10-23.11g.

132.     Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. N.J.S.A. § 58:10-23.11f(a)(2)(a).

133.     Plaintiffs have incurred, and will continue to incur, costs and damages associated with the discharges of the aforementioned sites and which are "cleanup and removal costs" within the meaning of N.J.S.A. § 58:10-23.11b including but not limited to restoration of a clean water supply and/or providing them with access to an alternate water source.

134.     Defendant Solvay, as owners and operators of the plant at the time the hazardous substances were discharged are liable, jointly and severally, without regard to fault, for all clean up and removal costs and damages Plaintiffs have incurred or will incur as a result of hazardous substances at their facility.

135.     Defendant Arkema as owners and operators of the West Deptford facility at the time the hazardous substances were discharged are liable, jointly and severally, without regard to fault, for all clean up and removal costs and damages Plaintiffs have incurred or will incur as a result of hazardous substances at their facility.

136.     As a direct or indirect result of the violations set forth above, Plaintiffs have incurred and will incur in the future substantial costs related to the restoration of a clean water supply and/or access to an alternate water source.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for all damages compensable under the laws of this state, including removal of the discharged hazardous substances and compelling Defendants to pay for the costs of providing Plaintiffs with a water supply free of hazardous contamination along with counsel fees and costs.

## <u>COUNT SIX</u>
## <u>PUNITIVE DAMAGES</u>

137.     Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

138.     At all material times hereto, Defendants knew or should have known that their PFAS chemicals could leach into groundwater and contaminate the drinking water of residents in surrounding communities, including Plaintiffs.

24

139.     At all material times hereto, Defendants knew or should have known that PFAS were hazardous substances and the reckless, and/or wanton and willful discharge of those chemicals into the environment and surrounding communities would eventually reach Plaintiffs' drinking water wells thus exposing them to high concentrations of the hazardous chemicals.

140.     At all material times hereto, Defendants knew or should have known of the health and environmental impacts of PFAS for decades but continued to use them in products and release them into the environment.

141.     At all material times hereto, Defendants knew that PFNA was harmful to people and the environment based on its own studies.

142.     At all material times hereto, despite actual or constructive knowledge of its chemicals' toxicity to humans and the environment, Defendants proactively sought to conceal that information from the public.

143.     At all material times hereto, despite actual or constructive knowledge of its chemicals' toxicity to humans and the environment, Defendants proactively misrepresented the chemicals' hazardous properties, including knowingly and purposefully withholding material information from regulators and governmental agencies.

144.     At all material times hereto, even after Defendants acquired actual knowledge that it was causing groundwater and drinking water contamination and thus exposing nearby residents to its PFAS chemicals, including Plaintiffs, Defendants continued their operations and continued discharging the hazardous chemicals into the environment and

exposing residents in surrounding communities, including Plaintiffs, in reckless and conscious disregard for the serious health and safety risks associated with such exposure.

145.     At all material times hereto, Defendants committed acts and omissions with respect to PFAS with actual malice and/or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

146.     At all material times hereto, Defendants knowingly, continuously, and with conscious indifference to the rights of residents in surrounding communities, including Plaintiffs, to have access to clean drinking water, caused, allowed, or permitted the discharge of large quantities of PFAS into the environment and groundwater, had no justification for doing so, and made no significant effort to alleviate the problem.

147.     Such conduct was performed to promote sales of their products, maximize profits, and to reduce or eliminate expenses they would have otherwise incurred to remediate the discharge of PFAS into the environment and Plaintiffs' private wells.

148.     Defendants' acts and omissions as set forth in the preceding paragraphs demonstrate their corporate disposition to recklessly and consciously disregard the health, safety, and welfare of residents in the community, including Plaintiffs.

149.     As a direct and proximate result of Defendants conscious and deliberate disregard for the health, safety, and welfare of residents in surrounding communities, including Plaintiffs, Plaintiffs suffered and continue to suffer severe and permanent damages, both economic and noneconomic, as set forth above.

150.     The aforesaid conduct of Defendants was committed with knowingly, conscious, and deliberate disregard for the rights and safety of residents in surrounding communities, including Plaintiffs, thereby entitling them to punitive damages in an

amount appropriate to punish Defendants and deter them from similar conduct in the future.

151.     Defendants' actions showed willful misconduct, malice, fraud, wantonness, and/or oppression, and raises the presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiffs request that this Court impose punitive damages upon Defendants, together with interest, costs, attorneys' fees and all such other relief as the Court deems proper.

## DAMAGES SOUGHT BY THE CLASS

152.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

153.     Plaintiffs and the classes have sustained and will continue to sustain damages to their property and health as a result of Defendants' actions. As a result, Plaintiffs and the classes seek monetary damages for each violation of the First through Fourth Claims for Relief. In particular, Plaintiffs and the classes seek (i) monetary damages reflecting the cost to remediate class members' property of the contamination caused by Defendants' conduct and to compensate class members for the diminution in value of their property caused by Defendants' conduct; (ii) monetary damages to compensate class members for the loss of the use and enjoyment of their properties caused by Defendant's conduct; (iii) monetary damages for the diminution of the value of the plaintiffs' property, and (iv) monetary damages to compensate class members for the loss of quality of life caused by Defendants' conduct.

154.    Plaintiffs and the classes also seek consequential damages sufficient to fund a biomonitoring program that is reasonably tailored to ascertain the extent of PFNA experienced by plaintiff and the biomonitoring class.

155.    Further, because Defendants' acts were done maliciously, oppressively, deliberately, and in reckless disregard of Plaintiffs and the classes, Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

156.    In addition to the above, Plaintiffs and the classes seek injunctive relief including, but not limited to, installing permanent filtration devices on all households and to maintain those filtration devices pursuant to industry best practices; to establish a biomonitoring protocol for Biomonitoring Class Members ascertain the extent of exposure to PFNA; and to take additional steps, to be proven at trial, that are determined necessary to remediate all class members' properties and/or residences to eliminate the presence of PFNA.

## VI.    **PRAYER FOR RELIEF**

157.    Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

      a.    an order certifying the proposed Municipal Water Property Damage Class, Municipal Water Nuisance Class, and Biomonitoring Class, designating Plaintiffs as the named representatives of the respective classes, and designating the undersigned as Class Counsel;

b.  a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the classes;

c.  an order requiring Defendants (i) to install permanent filtration devices on all household water service lines and to maintain those filtration devices until the risk of PFNA contamination in the groundwater and National Park Water Department treatment plant and other sources of its drinking water has ceased; (ii) to establish a biomonitoring protocol for Plaintiffs and Biomonitoring Class Members to assess the extent of their exposure to PFNA, and (iii) to take all necessary steps to remediate the property and/or residences of Plaintiffs and the classes to eliminate the presence of PFNA;

d.  an award to Plaintiffs and class members of compensatory, exemplary, consequential damages, including interest, in an amount to be proven at trial;

e.  an award of attorneys' fees and costs, as permitted by law;

f.  an award of pre-judgment and post-judgment interest, as provided by law;

g.  leave to amend this Complaint to conform to the evidence produced at trial; and

h.  such other relief as may be appropriate.

## VII.  <u>JURY DEMAND</u>

158.    Plaintiffs hereby demand a jury for all issues so triable.

Respectfully submitted,

WILLIAMS CEDAR, LLC

*David M. Cedar*                                    Dated: June 5, 2020

David M. Cedar, Esquire
Shauna L. Friedman, Esquire
Christopher Markos, Esquire
Alan Sklarsky, Esquire
Gerald J. Williams, Esquire
8 Kings Highway West, Suite B
Haddonfield, NJ 08033
(856) 470-9777
(888) 311-4899
dcedar@williamscedar.com
sfriedman@williamscedar.com
cmarkos@williamscedar.com
asklarsky@williamscedar.com
gwilliams@williamscedar.com
Attorneys for Plaintiffs

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE THAT David M. Cedar, Esquire is hereby designated as trial

counsel for the within matter.

WILLIAMS CEDAR, LLC

*David M. Cedar*                                      Dated: June 5, 2020

David M. Cedar, Esquire
Shauna L. Friedman, Esquire
Christopher Markos, Esquire
Alan Sklarsky, Esquire
Gerald J. Williams, Esquire
8 Kings Highway West, Suite B
Haddonfield, NJ 08033
(856) 470-9777
(888) 311-4899
dcedar@williamscedar.com
sfriedman@williamscedar.com
cmarkos@williamscedar.com
asklarsky@williamscedar.com
gwilliams@williamscedar.com
Attorneys for Plaintiffs

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

Undersigned counsel certifies that the following actions are pending involving the same subject matter of this controversy:

1. Giordano, et al. v. Solvay Specialty Polymers, USA, LLC, et al. – Civ. Action No. 1:19-cv-21573.

Undersigned counsel further certifies that there are no additional known parties who should be joined to the present action at this time.

Undersigned counsel further certifies that this case was also related to the subject matters of the complaints captioned Minix, et al. v. Solvay Specialty Polymers, et al. – Civ. Action No. 1:14-cv-4405; Hazelton, et al. v. Solvay Chemicals, Inc., et al. – Civ. Action No. 1:14-cv-845; and Thomas, et al. v. Solvay Chemicals, Inc., et al. – Civ. Action No. 1:14-cv-1870; but they have since been resolved and are no longer pending before this Court.

I certify the foregoing to be true and I am aware that if any of the above is willfully false, I am subject to punishment.

WILLIAMS CEDAR, LLC

*David M. Cedar*

David M. Cedar, Esquire
Shauna L. Friedman, Esquire
Christopher Markos, Esquire
Alan Sklarsky, Esquire
Gerald J. Williams, Esquire
8 Kings Highway West, Suite B
Haddonfield, NJ 08033
(856) 470-9777
(888) 311-4899
dcedar@williamscedar.com
sfriedman@williamscedar.com
cmarkos@williamscedar.com
asklarsky@williamscedar.com
gwilliams@williamscedar.com
Attorneys for Plaintiffs

Dated: June 5, 2020

32