UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KENNETH SEVERA, et al.

                    Plaintiffs,

        v.

SOLVAY SPECIALTY POLYMERS USA,
LLC, et al.

                    Defendants.

1:20-cv-06906-NLH-KMW

**OPINION**

**APPEARANCES**:

DAVID M. CEDAR
SHAUNA LAUREN FRIEDMAN
ALAN HERSCHEL SKLARSKY
WILLIAMS CEDAR, LLC
8 KINGS HIGHWAY WEST
SUITE B
HADDONFIELD, NJ 08033

        *On behalf of Plaintiffs*

KEGAN ANDREW BROWN
LATHAM & WATKINS LLP
885 3RD AVENUE
NEW YORK, NY 10022

        *On behalf of Defendant Solvay Specialty Polymers USA, LLC,*
        *successor by merger to Solvay Solexis, Inc.*

JOHN D. NORTH
IRENE HSIEH
JEMI GOULIAN LUCEY
MARJAN MOUSSAVIAN
GREENBAUM, ROWE, SMITH & DAVIS, LLP
99 WOOD AVENUE SOUTH
ISELIN, NJ 08830

KHRISTOPH ANDREAS BECKER
STEPTOE & JOHNSON LLP
1114 AVENUE OF THE AMERICAS
35TH FLOOR
NEW YORK, NY 10036

ROBERT L. SHUFTAN (*pro hac vice*)
STEPTOE & JOHNSON LLP
227 WEST MONROE STREET
SUITE 4700
CHICAGO, IL 60606

JOO CHA WEBB (*pro hac vice*)
STEPTOE & JOHNSON LLP
633 WEST FIFTH STREET
SUITE 1900
LOS ANGELES, CA 90071

   *On behalf of Defendant Arkema, Inc.*

**HILLMAN**, District Judge

   In this putative class action, Plaintiffs[1] assert claims
against Defendants for damages arising from Defendants' alleged
contamination of the municipal water supply in National Park,
New Jersey with poly- and perfluoroalkyl substances ("PFAS"),
particularly perflouoronaonanoic acid ("PFNA") and
perfluorooctanoic acid ("PFOA").  Presently before the Court are
the motions of Defendants to dismiss Plaintiffs' claims.  For
the reasons expressed below, Defendants' motions will be granted
on one issue, but denied in all other respects.

---

[1] There are seven named Plaintiffs who all reside in National
Park, New Jersey:  Kenneth Severa, Carol Binck, Edward Lastowka,
Suzette Lastowka, William Teti, Denise Snyder, and Jennifer
Stanton.

**BACKGROUND**

Plaintiffs' amended complaint (Docket No. 6) claims that Defendants, Solvay Specialty Polymers USA, LLC and its predecessor Solvay Solexis, Inc., and Arkema, Inc., discharged or were responsible for contamination of PFAS, particularly PFNA and PFOA, into the air, water and groundwater from their facility in West Deptford, New Jersey.[2]  Plaintiffs claim that over time, widespread PFNA and PFOA contamination has been discovered in the potable well water of residents in southern New Jersey who reside near this facility, as well as in municipal water wells, such as Plaintiffs' municipal water in National Park, at levels that threaten the health of those exposed and which create a public and private nuisance.  Plaintiffs claim that these chemicals are persistent in the environment, hazardous, and are not known to ever break down in water, soil, air, or the human body.

Plaintiffs claim that Defendants' improper disposal consisted, in part, of dumping the PFNA and other PFAS into the sewer system – a process which Defendants knew or should have known would result in the discharge of the PFNA and other PFAS

---

[2] Solvay operates a plant located at 10 Leonard Lane, West Deptford, New Jersey 08086, which encompasses 243 acres.  Arkema is the corporate successor to the entities, Pennwalt and Elf, that owned and operated the plant until 1990.  The plant was sold to Ausimont USA in 1990, and in 2002 Solvay acquired Ausimont.

into the environment.  Plaintiffs further claim that Defendants also discharged these chemicals directly into the environment, where they are subject to atmospheric dispersion and eventual deposition associated with the prevailing wind patterns.  This dispersion and deposition results in human exposure both on-site and off-site of the plant.  More specifically, Plaintiffs claim that Defendants improperly disposed of PFNA, PFOA and other PFAS on the actual plant site, contaminating the groundwater immediately beneath the plant, which is the source of the water used by the National Park Water Department for its drinking water, and that the PFNA used and discharged at the plant by Defendants from 1988 to 2010 have been detected in high concentrations in the drinking water for National Park.

Plaintiffs' amended complaint relates that PFNA and other PFAS are associated with increased risk in humans of testicular cancer, kidney cancer, prostate cancer, non-Hodgkin's lymphoma, pancreatic and ovarian cancer, as well as thyroid disease, high cholesterol, high uric acid levels, elevated liver enzymes, ulcerative colitis, and pregnancy-induced hypertension, as well as other conditions.  Exposure may result in developmental effects to fetuses during pregnancy or to breastfed infants, liver damage, and various immunological effects.  PFNA and other PFAS persist and bioaccumulate in humans, and as a result,

comparatively low exposures such as those suffered by Plaintiffs may result in large body burdens persisting for years. Plaintiffs claim that there is a causal link between exposure to PFNA, and other PFAS, and subclinical or subcellular injury and serious latent human disease.

Plaintiffs' amended complaint states that in 2018, New Jersey set the Maximum Contaminant Level ("MCL") for PFNA at 13 ppt, and the New Jersey Department of Environmental Protection ("NJDEP") required water utilities to begin testing for PFNA in their water beginning in the first quarter of 2019.  Since an effective date of January 22, 2020, National Park has been subject to an enforcement action by NJDEP for violating the MCL for PFNA in samples taken from its treatment plant.  According to NJDEP, samples taken from the National Park Water Department treatment plant exceeded the MCL of 13 parts per trillion for the time periods October 1, 2019 through December 31, 2019, and January 1, 2020 through March 31, 2020, in violation of N.J.A.C. 7:10-5.5(2)a5.  Since at least April 2019, and each quarter thereafter continuing to today, National Park Water Department has notified its customers that its water is contaminated with PFNA at levels above the MCL.

Although Plaintiffs and the proposed classes were not made aware that their drinking water was contaminated by PFNA until

2019, the existence of the contamination extends much further back in time.  Data provided to NJDEP about PFA use at the West Deptford plant indicate that 86.6% of the 125,069 kg of Surflon S-111 PFA mixture (which is primarily PFNA) used between 1991 and 2010 was released into the environment (i.e., the surrounding air and water).

There are approximately 1,000 households and approximately 3,000 residents in National Park.  All or nearly all of the residents of National Park rely on the National Park Water Department for the provision of water and sewer services, and there are no households in National Park that draw drinking water from private wells.  National Park Water Department has advised its customers to purchase NSF-certified carbon filtration systems at their own cost.

Plaintiffs' amended complaint asserts six counts against Defendants:  Count I - Public Nuisance, Count II - Private Nuisance, Count III - Trespass, Count IV - Negligence, Count V - New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 et seq., and Count VI - Punitive Damages. Plaintiffs have also asserted putative class action claims pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3).  Plaintiffs propose three classes:  Municipal Water Property Damage Class, Municipal Water Nuisance Class, and

Biomonitoring Class.

Plaintiffs' alleged damages include: purchasing water filtration systems, which are reasonable and necessary to abate the contamination of PFNA in the water; locating and purchasing water for drinking, cooking, cleaning, and other uses, which is an additional reasonable and necessary response to the contamination when such filtration is not available; a diminution in value and nuisance of their property; the interference with the rights of Plaintiffs to use and enjoy their property; substantial expense incurred and will incur in the future related to the restoration of a clean water supply or access to an alternate water source; and exposure and consuming drinking water contaminated with PFNA, which puts Plaintiffs at significant risk of developing medical conditions associated with exposure to PFNA.

Defendants have moved to dismiss Plaintiffs' amended complaint, arguing that Plaintiffs lack standing to bring their claims, and their claims must otherwise be dismissed for various pleading deficiencies.  Plaintiffs have opposed Defendants' motions.

## DISCUSSION

**A.   Subject matter jurisdiction**

The averred basis for this Court's subject matter

jurisdiction is the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  CAFA confers jurisdiction where (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims, see 28 U.S.C. §§ 1332(d)(2)-(6); (2) the citizenship of at least one class member differs from that of any defendant, i.e., there is minimal diversity, see 28 U.S.C. § 1332(d)(2)(A); and (3) the class consists of at least 100 members, see 28 U.S.C. § 1332(d)(5)(B).

The allegations in Plaintiffs' amended complaint satisfy these elements of CAFA.  Plaintiffs claim that the amount in controversy exceeds $5,000,000, as aggregated across all individual claims, minimal diversity is readily met because all Plaintiffs and proposed class members are citizens of New Jersey while none of the Defendants are citizens of New Jersey (see Joint Certification of the Citizenship of the Parties, Docket No. 70), and the proposed class consists of approximately 3,000 National Park residents.

**B.   Standard for Motion to Dismiss**

A motion to dismiss for lack of standing is governed by Fed. R. Civ. P. 12(b)(1).  The standard for reviewing a complaint on its face - a facial attack - under Rule 12(b)(1) essentially applies the same standard under Rule 12(b)(6).  See In re Schering Plough Corp. Intron/Temodar Consumer Class

8

Action, 678 F.3d 235, 243 (3d Cir. 2012) (citation omitted) (explaining that standing is a jurisdictional matter which should not be confused with requirements necessary to state a cause of action, but in reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff").

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,
47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,
40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.
Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should
identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief. Malleus v.
George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C. Analysis**

Defendants assert the following arguments to support their motions to dismiss Plaintiffs' amended complaint: (1) Plaintiffs

lack standing to bring their claims because they have not plausibly alleged concrete injuries, and correspondingly, Plaintiffs cannot show that Defendants proximately caused their alleged injuries because they are too remote, and they are derivative rather than direct; (2) Plaintiffs allege all their claims against Defendants collectively without identifying which Defendant caused which alleged injuries, and Plaintiffs' amended complaint fails to provide sufficient facts to support their counts for public nuisance, private nuisance, trespass, negligence, damages under the Spill Act, Plaintiffs' request for medical monitoring, and punitive damages.

### 1.   **Standing / Proximate Cause**

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." Common Cause of Pennsylvania v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006)).  Article III's standing requirement "is every bit as important in its circumscription of the judicial power of the United States as in its granting of that power," and invoking the power of the federal judiciary requires more than important issues and able litigants.  Id. (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454

U.S. 464, 476 (1982)).

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case or controversy requirement is satisfied only where a plaintiff has standing."  Id. at 257-58 (quoting Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269 (2008)).  To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  As "[t]he party invoking federal jurisdiction," a plaintiff "bears the burden of establishing these elements." Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 478 (3d Cir. 2018) (quoting Spokeo, Inc. v. Robins, --- U.S. ----, 136 S. Ct. 1540, 1547 (2016); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

"The primary element of standing is injury in fact, and it is actually a conglomerate of three components.  To establish an injury in fact, a plaintiff must first show that he or she suffered an invasion of a legally protected interest.  Second, a plaintiff must show that the injury is both concrete and particularized.  Third, a plaintiff must also show that his or her injury is actual or imminent, not conjectural or

hypothetical." Id. (citations and quotations omitted).

The standing analysis "is drawn from common-law principles of proximate cause and remoteness of injury." James v. Arms Technology, Inc., 820 A.2d 27, 37 (N.J. Super. Ct. App. Div. 2003) (quoting Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 921 (3rd Cir. 1999), cert. denied, 528 U.S. 1105 (2000)). For centuries, it has been "a well-established principle of the common law, that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause." Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 132 (2014) (citations and alterations omitted). "That venerable principle reflects the reality that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." Id. (citation and quotations omitted). "The proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct," and "that is ordinarily the case if the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts." Id. (citation and quotations omitted).

"Ordinarily, issues of proximate cause are considered to be jury questions," but a court may decide the issue as a matter of law where "no reasonable jury could find that the plaintiff's

injuries were proximately caused." <u>Broach-Butts v. Therapeutic Alternatives, Inc.</u>, 191 A.3d 702, 711 (N.J. Super. App. Div. 2018) (citing <u>Perez v. Wyeth Labs. Inc.</u>, 161 N.J. 1, 27, 734 A.2d 1245 (1999); <u>Vega by Muniz v. Piedilato</u>, 154 N.J. 496, 509, 713 A.2d 442 (1998)) (other citations omitted).  Proximate cause is "a cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." <u>Id.</u> (citations omitted).  It is not enough that the injury would not have occurred but for the defendant's negligence, where there are other contributing causes of the injury.  <u>Id.</u>  A plaintiff must show that the negligence was a "substantial factor" contributing to the result.  <u>Id.</u> (citing <u>Komlodi v. Picciano</u>, 217 N.J. 387, 422, 89 A.3d 1234 (2014) ("[T]he 'substantial factor' test is given when there are concurrent causes potentially capable of producing the harm or injury.")).  "A substantial factor is one that is not a remote, trivial or inconsequential cause." <u>Id.</u> (citations omitted).

Ultimately, the "actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." <u>Id.</u> (citing <u>Restatement (Second) of Torts</u> §

435(2)) (other citations omitted).

Defendants' main arguments with regard to Plaintiffs'
standing and regarding proximate cause essentially boil down to
this:  Even if Defendants' PFAS discharge into the environment
contaminated the water National Park sells to its residents,
Plaintiffs' beef is with National Park for supplying Plaintiffs
with contaminated water, and without any injuries directly
suffered as a result of Defendants' chemical discharge,
Plaintiffs lack standing to bring their claims and cannot
establish that Defendants proximately caused their injuries.

The Court finds Plaintiffs have sufficiently alleged that
they have suffered concrete injuries to confer them standing.
Plaintiffs' alleged injuries include the purchase of water
filtration systems and water for drinking and other household
uses, and the substantial expense they have incurred and will
incur in the future related to the restoration of a clean
water supply or access to an alternate water source, as the
water supplied by National Park is Plaintiffs' only source of
running and potable water in their homes.  Additionally,
Plaintiffs claim a diminution in value of their property and the
interference with their use and enjoyment of their property.
With regard to how the contaminated water has impacted
Plaintiffs physically, Plaintiffs claim that the exposure to the

PFNA discharged into the environment by Defendants and their consumption of water contaminated with PFNA has put Plaintiffs at significant risk of developing medical conditions associated with exposure to PFNA.  These alleged injuries are concrete and particularized, and actual and imminent.

The Court further finds that regardless of any claims National Park may have against Defendants for their alleged contamination of its water supply, and any claims Plaintiffs may have against National Park for providing contaminated water, the Court finds at this motion to dismiss stage that Plaintiffs have sufficiently pleaded facts, when accepted as true, that Defendants' alleged actions directly caused their injuries.

Plaintiffs claim that their only available source of running and potable water in their homes comes from the National Park water supply, and that since 2019, the National Park Water Department has notified its customers that its water is contaminated with PFNA at levels above the MCL set by NJDEP. Plaintiffs further claim that since the 1970s, the nearby West Deptford plant had continuously discharged PFAS into the environment, and PFNA specifically was used and discharged at the plant by Defendants from 1988 to 2010.  Defendants' dumping of PFNA and other PFAS into the sewer system contaminated the groundwater, and were subject to atmospheric dispersion and

eventual deposition associated with the prevailing wind
patterns.  Plaintiffs claim that PFNA and other PFAS persists,
never breaking down in water, soil, air, or the human body.

Thus, on the face of Plaintiffs' amended complaint it is
not "highly extraordinary" that Defendants' actions of
discharging chemicals into the environment that persist forever
in the environment and human body resulted in the injuries
claimed by Plaintiffs.  That Defendants' chemicals have ended up
in Plaintiffs' homes and bodies through a water supply provided
by their town, rather than water directly from wells on their
property, does not, at this pleading stage at least, break the
causal chain.  This is especially true considering Plaintiffs'
claims regarding atmospheric dispersion of Defendants' PFAS and
Plaintiffs' exposure to that PFAS in the air, which does not
pass through a third party.

Consequently, the Court finds that Plaintiffs' injuries as
alleged are not too remote from Defendants' alleged unlawful
conduct to require dismissal, and Plaintiffs have standing to
pursue their claims against Defendants.

### 2.   Sufficiency of pleading

Defendants argue that Plaintiffs improperly aggregate their
claims against them without the specificity required under Rule
8 and Twombly/Iqbal.  Defendants further argue that this

collective pleading is also fatal to their other claims.

The Court does not agree.  Plaintiffs allege that when Arkema operated the West Deptford plant until 1990 it discharged PFAS into the environment, it knew of the dangers of PFAS, including how they persist forever, but it contaminated the environment - the water and the air - anyway.  Plaintiffs allege the same about Solvay when it took over the plant in 2002.  When Plaintiffs collectively refer to "Defendants" regarding their discharge of PFAS and knowledge of the nature of PFAS, that is simply for pleading efficiency rather than pleading deficiency, as it would be very repetitive and cumbersome to repeat most of the allegations twice.[3]

### a. Public Nuisance

For Plaintiffs' public nuisance count, Defendants argue that they did not control the public nuisance - i.e., the contaminated water supply - which is a required element of a public nuisance claim.  Further, Defendants argue that Plaintiffs have not pleaded the "special injury" necessary to support a public nuisance claim.

"A public nuisance is an unreasonable interference with a right common to the general public."  In re Lead Paint

---

[3] The Court notes that even though Solvay and Arkema have filed separate motions, their arguments are for the most part substantively identical.

Litigation, 924 A.2d 484, 496 (N.J. 2007) (quoting Restatement (Second) of Torts § 821B (1979)).  "Circumstances that may sustain a holding that an interference with a public right is unreasonable include . . . [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience."  Id.

A "public nuisance, by definition, is related to conduct, performed in a location within the actor's control, which has an adverse effect on a common right."  Id. at 499.  Originally, the remedies for a public nuisance were a prosecution for a criminal offense or a suit to abate or enjoin the nuisance brought by or on behalf of the state or an appropriate subdivision by the proper public authority.  Restatement (Second) of Torts § 821C (comment a).  A private party may seek to recover damages but only if he has a "special injury."  In re Lead Paint, 924 A.2d at 496.  A "special injury" is "harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference."  Id. at 498.[4]

---

[4] In In re Lead Paint Litigation, twenty-six municipalities and counties sought to recover, from manufacturers and distributors of lead paints, the costs of detecting and removing lead paint from homes and buildings, of providing medical care to residents affected with lead poisoning, and of developing programs to

With regard to control, Defendants argue that National Park decided where to draw groundwater as raw water for its drinking water, National Park decided whether and how to treat that raw water for PFNA, and National Park decided to sell drinking water with PFNA to Plaintiffs.  Thus, Defendants argue that because it did not cause or control the alleged public nuisance - National Park did - they cannot be held liable for creating and controlling a public nuisance.

Contrary to Defendants' characterization of Plaintiffs'

---

educate residents about the dangers of lead paint.  The New Jersey Supreme Court was tasked with determining a single issue: Whether the plaintiffs stated a cognizable claim based on the common law tort of public nuisance.  In re Lead Paint, 924 A.2d at 487.  The court concluded that the plaintiffs did not. First, the court found that the conduct that gave rise to the public health crisis - the public nuisance - was the poor maintenance of premises where lead paint may be found by the owners of those premises, and not the conduct of merely offering an everyday household product for sale, despite how that product may ultimately cause harm by others' use of it.  Id. at 501. Thus, the plaintiffs did not meet the control prong to state a viable public nuisance claim.  Second, the court determined that all of the injuries plaintiffs identified were general to the public at large, and not "special" to the plaintiffs.  Id. at 503.

Even though Solvay and Arkema properly rely upon In re Lead Paint for the articulation of the law of public nuisance, the case is substantively inapposite.  In In re Lead Paint the municipalities sought to apply the environmental tort exception to the Products Liability Act, N.J.S.A. 2A:58C-6, but the court found that the public nuisance theory of liability claimed by the plaintiffs was actually a PLA claim and was therefore actionable only under the strictures of the PLA.  See Sun Chemical Corporation v. Fike Corporation, 235 A.3d 145, 154 (N.J. 2020) (discussing In re Lead Paint).  The intersection between the PLA and the common law is not at issue here.

claims, Plaintiffs do not allege that the municipal water supply
is the public nuisance.  Rather, Plaintiffs allege that the
public nuisance constitutes the chemicals discharged into the
environment by Defendants that ended up in their water supply.
Plaintiffs allege that Defendants' actions of dumping PFAS in
the environment, over which Defendants and not National Park had
control, unreasonably interfered with their public right to
PFNA-free drinking water.  These allegations are sufficient to
meet the first prong of Plaintiffs' public nuisance count.

     For the second, "special injury" prong, Defendants argue
that Plaintiffs' allegation that PFNA in their water is harmful
is not a "special injury" because it is not different from the
injury to the general public.  In other words, Defendants
essentially argue that PFNA in drinking water is not an injury
special to Plaintiffs because PFNA is in the entire town's
drinking water and it allegedly injures the general public in
the same way as it harms these particular Plaintiffs.

     The Court agrees with Defendants that Plaintiffs have not
pleaded an injury that is different from the injury which
constitutes the public nuisance itself.  The public right here
is the National Park residents' access to a water supply
uncontaminated with PFAS, and PFNA in particular.  The public
nuisance is Defendants' alleged interference with that right

through the discharge of PFAS into the environment that has contaminated National Park's water.  All of Plaintiffs, and the rest of the National Park residents, suffer from that same alleged nuisance.  No Plaintiff has identified an injury that is separate from the injury caused to all of National Park by Defendants' alleged interference with their right to a clean water supply.  Cf. Corradetti v. Sanitary Landfill, Inc., 912 F. Supp. 2d 156, 163 (D.N.J. 2012) (finding that the plaintiffs satisfied the special injury prong of their public nuisance claim because they alleged that the defendants' pollution contaminated their drinking water and migrated onto their property, which injuries were separate from the general injury of contaminated groundwater that the public has endured).

Plaintiffs' public nuisance claim will not be dismissed on this basis, however.  A plaintiff must prove a special injury to be awarded money damages on a public nuisance claim, but the special injury requirement is not necessary when the requested relief is to enjoin or abate the public nuisance, and a plaintiff has "standing to sue as a representative of the general public, as a citizen in a citizen's action, or as a member of a class in a class action."  In re Lead Paint Litigation, 191 N.J. 405, 426–27, 924 A.2d 484 (2007) (quoting Restatement (Second) of Torts § 821C(2)).  Plaintiffs' requested

relief for their public nuisance count is not money damages but instead that Defendants be directed to abate the public nuisance.[5]   Whether Plaintiffs become class members by virtue of their class action claims will be determined at a later stage in the case,[6] but at a minimum Plaintiffs are representatives of the general public who have standing, as found above, to bring their claims and seek the remedy they seek against these Defendants. Plaintiffs' public nuisance count may proceed.

### b. Private Nuisance

The New Jersey Supreme Court has set forth the long-established common law cause of action for private nuisance:

> A cause of action for private nuisance derives from the defendant's "unreasonable interference with the use and enjoyment" of the plaintiff's property.  Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448, 149 A.2d 599 (1959).  When analyzing nuisance claims, our courts are guided by the principles set forth in the Restatement (Second) of Torts.

---

[5] Plaintiffs also seek "interest, costs, attorneys' fees, and all such other relief as the Court deems proper."  (Docket No. 6 at 17.)  Interest is not available for this count because no money damages are requested or could be awarded.  Whether Plaintiffs are entitled to attorneys' fees and costs is a determination separate from the assessment of Plaintiffs' public nuisance count.  This common law claim does not specifically provide for such remedies.

[6] See, e.g., Rowe v. E.I. Dupont De Nemours and Co., 262 F.R.D. 451, 462-63 (D.N.J. 2009) (for a public nuisance claim, certifying a subclass of individuals who were residential water customers of the town's water department who had an ownership interest in their real property served by the town, which supplied drinking water containing PFOA).

24

Two Restatement sections, sections 822 and 824 of the Restatement, are central to our analysis. Restatement section 822 identifies the elements of a cause of action for private nuisance:

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
(a) intentional and unreasonable, or
(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Our courts have adopted the standard of Restatement section 822 to assess liability for private nuisance.

Ross v. Lowitz, 120 A.3d 178, 185 (N.J. 2015).

Defendants have moved to dismiss Plaintiffs' private nuisance count based on Rowe v. E.I. Dupont De Nemours and Co., 262 F.R.D. 451, 459 (D.N.J. 2009), arguing that the law is clear that plaintiffs who allege contamination of a municipal water supply cannot maintain a claim for private nuisance. In Rowe, the court declined to certify a class for a private nuisance cause of action based on contamination of a municipal water supply, explaining as follows:

[T]here is a very simple yet critical problem that neither party addressed in their submissions. "In order to effect a private nuisance [based on contaminated groundwater], the contaminated water must reach the groundwater below the plaintiff's property or affect a direct supply of water on an individual's property." Rhodes v. E.I. DuPont De Nemours and Co., 2009 WL 3080188, at *12 (S.D. W.Va. Sept. 28, 2009) (citing Anderson v. W.R. Grace & Co., 628 F. Supp. 1219, 1233 (D. Mass. 1986); Adkins v. Thomas Solvent Co., 440 Mich. 293, 487 N.W.2d 715 (Mich. 1992)). When the

> contamination only affects a plaintiff's municipal water
> supply, as opposed to his private water supply on his
> property, he has no claim for a private nuisance; rather,
> he must bring a claim based on a theory of public nuisance.
> Here, the vast majority of the proposed class members do
> not allege contamination of their private wells, but
> contamination of their municipal water.  Only those
> proposed class members whose private wells are allegedly
> affected by the contamination may bring a private nuisance
> claim.  Accordingly, for purposes of a private nuisance
> claim, the Court will certify a subclass of all individuals
> who, as of the date of this Opinion, have an ownership
> interest in a private well within a two-mile radius of
> DuPont's Chambers Works plant, which supplies drinking
> water containing PFOA.

Rowe, 262 F.R.D. at 462.

The court in Rowe noted, however, "Although the Court, through its own research, is aware that under New Jersey law, 'a nuisance *may* be a public and a private one at the same time,' the parties have failed to present any facts or arguments as to how this principle would apply in this case."  Id. at 462 n.7 (quoting Malhame v. Borough of Demarest, 162 N.J. Super. 248, 260, 392 A.2d 652 (Law Div. 1978) (citing Cresskill v. Dumont, 28 N.J. Super. 26, 38, 100 A.2d 182 (Law Div.1953)) (emphasis added in Rowe).

The Court disagrees with Defendants' contention that the law in New Jersey regarding a New Jersey common law private nuisance claim in the context of a contaminated public water supply is as stated in Rowe.  Rowe cites to out-of-state law for the proposition that a private nuisance suit is only viable if

groundwater under a plaintiff's residence is affected, and then extrapolates without citation that where a plaintiff does not allege contamination of his private water supply and only that the municipal water supply is contaminated, plaintiff is limited to a claim for public nuisance.  While this Court does not question <u>Rowe</u>'s decision to decline to certify a particular class in the circumstances before it, after consideration of New Jersey state law this Court finds that Plaintiffs have sufficiently pleaded a cause of action for private nuisance.

Set forth above, under New Jersey law, a defendant is liable for a private nuisance if its conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and that invasion is either intentional and unreasonable, or unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities. <u>Ross</u>, 120 A.3d at 185.

In Plaintiffs' private nuisance count against Defendants, Plaintiffs claim that Defendants' negligent, reckless, or intentional acts of discharging PFAS into the environment: (1) has led to the contamination of their drinking water and the transportation of that contaminated water into their homes, (2) has interfered with their right to use and enjoy their property

as they so choose, (3) has interfered with their right to avail themselves of their property's value as an asset or source of collateral for financing, and (4) has caused Plaintiffs to refrain from using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense.

"[T]he essence of a private nuisance is an unreasonable interference with the use and enjoyment of land." Sans v. Ramsey Golf & Country Club, 149 A.2d 599, 605 (N.J. 1959). "[A] nuisance may be a public and a private one at the same time." Malhame, 392 A.2d at 657 (quoting Cresskill, 28 N.J. Super. 26, aff'd 15 N.J. 238, 104 A.2d 441 (1954)). This view was recently reiterated in Sines v. Darling Ingredients Inc., 2020 WL 5015488, at *4 (D.N.J. 2020), which stated, "[w]hen a private or public nuisance is so widespread that it affects both public and private rights, it may be actionable as either public or private 'or both public and private.'" (quoting Baptiste v. Bethlehem Landfill Company, 965 F.3d 214, 223 (3d Cir. 2020) (further explaining, in the application of analogous Pennsylvania private nuisance law, that "there may be some overlap between these two causes of action, for instance when, as here, the alleged interference with private land supplies the basis for both the private nuisance claim and the particular harm required to sustain a private claim for public nuisance")).

Thus, not only have Plaintiffs stated a viable cause of action regarding how Defendants' discharge of PFAS has contaminated their only source of water supplied by the municipality and has resulted in a public nuisance, Plaintiffs have also asserted a viable cause of action that Defendants' discharge of PFAS is the proximate cause of their inability to use and enjoy their private properties as they would if Defendants had not so acted.  Plaintiffs' private nuisance count may proceed.

### c. Trespass

Defendants make essentially the same argument for the dismissal of Plaintiffs' trespass count as they assert for Plaintiffs' public nuisance count - National Park, and not Defendants, controls the supply of water entering into Plaintiffs' properties, and therefore they cannot be held to have trespassed on Plaintiffs' land.  As with Plaintiffs' public nuisance count, the Court finds this argument to be unavailing.

Under New Jersey law, which applies the Restatement's standard of liability where a plaintiff pursues a trespass claim, a defendant is liable in trespass for an "intentional[ ]" entry onto another's land, regardless of harm."  Ross v. Lowitz, 120 A.3d 178, 188 (N.J. 2015) (quoting Restatement § 158). Liability for trespass is also imposed when "[o]ne who

recklessly or negligently, or as a result of an abnormally
dangerous activity, enters land in the possession of another or
causes a thing or third person so to enter is subject to
liability to the possessor if, but only if, his presence or the
presence of the thing or the third person upon the land causes
harm to the land, to the possessor, or to a thing or a third
person in whose security the possessor has a legally protected
interest." Restatement (Second) of Torts § 165, cited in Ross,
120 A.3d at 188. Liability for a "continuing trespass" arises
with the "continued presence" on another's "land of a structure,
chattel, or other thing which the actor has tortiously placed
there." Ross, 120 A.3d at 188 (quoting Restatement § 161(1) &
comment b). "Like a private nuisance claim under section 822 of
the Restatement, a cause of action for trespass requires a
showing of intentional, reckless or negligent conduct, or the
conduct of abnormally dangerous activity." Id. (citing
Restatement §§ 165–66).

Plaintiffs claim that Defendants intentionally, recklessly,
or negligently discharged PFAS which ultimately entered into
their homes through water contaminated with PFNA, they never
consented to PFNA on their properties, and they have been harmed
and continue to be harmed by this unpermitted past and
continuing presence of Defendants' PFNA on their property and in

their bodies.  These allegations sufficiently plead facts to
support the elements of a viable trespass claim.

### d.  Negligence

Similar to their arguments regarding Plaintiffs' nuisance
and trespass claims, Defendants argue that Plaintiffs'
negligence count must be dismissed because they had no duty to
control the actions of National Park and National Park's
"misconduct" of selling water containing PFNA to its residents.
As discussed at length above with regard to proximate cause,
Plaintiffs have alleged sufficient facts to support their claims
that regardless of National Park's actions relative to the water
supply, Defendants had a duty of care with regard to the proper
handling of PFAS, and Defendants breached that duty by
discharging PFAS into the environment, which directly caused
Plaintiffs harm.  Plaintiffs' negligence count states a viable
cause of action against Defendants and will not be dismissed.
See Fernandes v. DAR Development Corp., 119 A.3d 878, 885–86
(N.J. 2015) ("To prevail on a claim of negligence, a plaintiff
must establish four elements: (1) that the defendant owed a duty
of care; (2) that the defendant breached that duty; (3) actual
and proximate causation; and (4) damages. . . .  To act non-
negligently is to take reasonable precautions to prevent the
occurrence of foreseeable harm to others." (citations omitted)).

### e.   Plaintiffs' other claims

Defendants have moved to dismiss Plaintiffs' Spill Act count, Plaintiffs' request for medical monitoring, and Plaintiffs' stand-alone count for punitive damages.  In Giordano v. Solvay Specialty Polymers USA, LLC, 1:19-cv-21573-NLH-KMW (Docket No. 119, 120), 2021 WL 754044, at *6-*9 (D.N.J. Feb. 21, 2021), this Court directly addressed the identical arguments presented by Defendants in this action.  The Court adopts and incorporates the law and analysis set forth in Giordano to Defendants' arguments here.  Plaintiffs' Spill Act count and request for medical monitoring will not be dismissed. Plaintiffs' stand-alone count for punitive damages will be dismissed, but Plaintiffs' request for punitive damages, as permitted under the law governing their claims, may proceed.

### CONCLUSION

Plaintiffs' only source of water on their properties for drinking and other household use is their municipality's water supply.  Between 1988 and 2010, Plaintiffs allege that Defendants discharged from the nearby West Deptford plant various PFAS, which persist in the environment, into the sewer system, resulting in groundwater and atmospheric contamination. In 2019, Plaintiffs learned that their water supply contained, and continues to contain, one form of PFAS - PFNA - at levels

that exceeded New Jersey's Maximum Contaminant Level.

Plaintiffs claim various forms of harm from this contamination, including loss of property value, costs to filter the water and purchase bottled water, and the potential for serious health consequences due to the bioaccumulation of PFNA. Plaintiffs have sufficiently pleaded facts to support their standing to bring their claims.  Plaintiffs have also pleaded enough facts to make out a plausible claim that Defendants' actions caused Plaintiffs' alleged injuries.  These same pleaded facts also make plausible all substantive state law counts asserted against Defendants in Plaintiffs' amended complaint. Consequently, Defendants' motions to dismiss will be granted as to the dismissal of Plaintiffs' count for punitive damages as a stand-alone count, but denied in all other respects.

An appropriate Order will be entered.


Date: ___March 9, 2021___                ___s/ Noel L. Hillman___
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.