```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY


JOHN GIORDANO, et al.,        )    19-CV-21573(NLH/AMD)
                              )    20-CV-8487(NLH/AMD)
            Plaintiffs,       )    20-CV-6906(NLH/AMD)
                              )    21-CV-9725(NLH/AMD)
      vs.                     )
                              )
SOLVAY SPECIALTY POLYMERS     )
USA LLC, et al.,              )    Camden, NJ
                              )    March 30, 2023
            Defendants.       )    2:13 p.m.


                 TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE ANN MARIE DONIO
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:           ALAN H. SKLARSKY, ESQUIRE
(Groups 1, 3, 4)              WILLIAMS CEDAR, LLC
                              8 Kings Highway West, Suite B
                              Haddonfield, NJ 08033


                              SHAUNA L. FRIEDMAN, ESQUIRE
                              BARRY, CORRADO & GRASSI, PC
                              2700 Pacific Avenue
                              Wildwood, NJ 08260


For the Plaintiffs:           ARNOLD C. LAKIND, ESQUIRE
(Group 2)                     SZAFERMAN, LAKIND, BLUMSTEIN &
                              BLADER, PC
                              101 Grovers Mill Road
                              Suite 200
                              Lawrenceville, NJ 08648


                              KEVIN CONWAY, ESQUIRE
                              MICHAEL JOHN LUBECK, ESQUIRE
                              COONEY & CONWAY
                              120 North Lasalle Street
                              Suite 3000
                              Chicago, IL 60602


                              VICTORIA PHILLIPS, ESQUIRE
                              PHILLIPS & PAOLICELLI, LLP
                              Quakerbridge Executive Center
                              101 Grovers Mill Road
                              Lawrenceville, NJ 08648
```

APPEARANCES:   (continued)

For the Defendants:          ROBERT L. SHUFTAN, ESQUIRE
(Arkema, Inc.)               STEPTOE & JOHNSON, LLP
                             1114 Avenue of the Americas
                             35th Floor
                             New York, NY 10036


                             DEREK C. SMITH, ESQUIRE
                             STEPTOE & JOHNSON, LLP
                             227 West Monroe Street
                             Suite 4700
                             Chicago, IL 60606

                             JOO CHA WEBB, ESQUIRE
                             STEPTOE & JOHNSON, LLP
                             633 West Fifth Street
                             Suite 1900
                             Los Angeles, CA  90071


                             JEMI G. LUCEY, ESQUIRE
                             GREENBAUM, ROWE, SMITH &
                             DAVIS, LLP
                             99 Wood Avenue South
                             Iselin, NJ 08830


For the Defendants:          CRYSTAL L. PARKER, ESQUIRE
(Solvay)                     STEVEN C. HERZOG, ESQUIRE
                             PAUL, WEISS, RIFKIND,
                             WHARTON & GARRISON, LLP
                             1285 Avenue of the Americas
                             New York, NY 10019


For the Defendants:          RYAN RICHMAN, ESQUIRE
(duPont and Chemours)        LANNY S. KURZWEIL, ESQUIRE
                             MCCARTER & ENGLISH, LLP
                             100 Mulberry Street
                             Four Gateway Center
                             Newark, NJ 07102

                             DAVID A. SCHLIER, ESQUIRE
                             MCCARTER & ENGLISH LLP
                             Renaissance Center
                             405 N. King Street, 8th Floor
                             Wilmington, DE 19801

APPEARANCES:   (continued)

For the Defendants:              D.J. CAMERSON, II, ESQUIRE
(3M Company)                     BRESSLER, AMERY & ROSS, PC
                                 325 Columbia Turnpike
                                 Suite 301
                                 Florham Park, NJ 07932


                                 ANDREW J. CALICA, ESQUIRE
                                 JORDAN D. SAGALOWSKY, ESQUIRE
                                 MAYER BROWN, LLP
                                 1221 Avenue of the Americas
                                 New York, NY 10020



Audio Operator:                  SUSAN BUSH


Transcribed by:                  DIANA DOMAN TRANSCRIBING, LLC
                                 P.O. Box 129
                                 Gibbsboro, NJ 08026
                                 Office: (856) 435-7172
                                 Fax:    (856) 435-7124
                                 Email:   dianadoman@comcast.net



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1                            I N D E X

2    GROUPS 1, 3, 4 SETTLEMENT:                          PAGE

3    Re: Scheduling                                         9

4

5    GROUP 2:                                            PAGE

6    Re: Depositions                                       11

7    Re: Experts                                           12

8     By Mr. Richman                        12, 15, 19, 21

9     By Mr. Lakind                             14, 17, 20

10

11   DEPOSITIONS AND DEPOSITION OF RICHARD BOND, SR:    PAGE

12    By Ms. Phillips                             22, 26

13    By Mr. Richman                              24, 29

14    By Mr. Conway                                   30

15

16   EDUCATION AND EMPLOYMENT RECORDS:                  PAGE

17    By Mr. Richman                                  31

18

19   DEPOSITIONS AND OUTSTANDING RECORDS:              PAGE

20    By the Court                                    32

21

22   CANCER REGISTRY:                                  PAGE

23    By Mr. Lakind                                   33

24    By Mr.  Richman                                 34

25    By the Court                                    35

1                          I N D E X

2    SIMMONS REPORT:                                    PAGE

3       Mr. Richman                                   35, 36

4       Mr. Lakind                                       36

5    30(B)(6) NOTICE:                                   PAGE

6       By the Court                                     36

7

8    TOPIC CONCERNS:                                    PAGE

9       By Mr. Calica                                    37

10      By plaintiffs' counsel                           39

11      By the Court                                     40

12   Re: Topics 19, 5 and 20                            PAGE

13      By Mr. Lakind                                 42, 43

14      By Mr. Richman                                42, 43

15      By the Court                                     43

16

17   *** Transcriber's note -- (Inaudibles) are due to telephone

18   interference or parties speaking over each other.

19

20

21

22

23

24

25

1          (The following telephonic conference was heard at

2     2:13 p.m.)

3          THE COURT:  All right, this is Judge Donio.  We're

4     on the conference call phone with all attorneys appearing by

5     phone for a status conference and to finalize hopefully some

6     discovery issues.

7          Let me start with what I'll call the Group 1, 3 and

8     4 cases, the Docket Number -- first Docket Number in Group 1

9     being 19-21573, and there's a number of cases that are in the

10    Group 1; and then the Group 3 is the Class Action, 20-6906;

11    and the Group 4 (sic) is the Municipality Cost Recovery suit,

12    21-9725 (sic).

13         And I would ask that counsel place their

14    appearances beginning with plaintiffs' counsel in those

15    cases.

16         MR. SKLARSKY:  Yes, Your Honor.  It's Alan Sklarsky

17    from Williams Cedar, co-counsel on the Group 1, 3 and 4

18    cases.

19         MS. FRIEDMAN:  And good afternoon, Your Honor.

20    Shauna Friedman from Barry, Corrado & Grassi, also on behalf

21    of Group 1, 3 and 4 plaintiffs.

22         THE COURT:  All right, thank you.

23         For the Solvay --

24         MS. PARKER:  Good afternoon, Your Honor.  It's

25    Crystal Parker of Paul Weiss on behalf of defendant Solvay,

1    and with me is my colleague Steven Herzog, also of Paul

2    Weiss.

3              THE COURT:  Thank you.

4              For Arkema?

5              MR. SHUFTAN:  Good afternoon, Your Honor.  Robert

6    Shuftan of Steptoe & Johnson on behalf of Arkema, Inc,

7    together with my colleagues Derek Smith and Joo Cha Webb.

8              MS. LUCEY:  Good afternoon, Your Honor.  Jemi Lucey

9    with Greenbaum, Rowe, Smith & Davis, also on behalf of

10   Arkema.

11             THE COURT:  Thank you.

12             For E. I. duPont and the other defendants in that

13   group?

14             MR. KURZWEIL:  Your Honor, it's Lanny Kurzweil from

15   McCarter & English, and I'm joined by my partner Ryan Richman

16   and by our colleague David Schlier.

17             THE COURT:  Thank you.

18             For 3M?

19             MR. CAMERSON:  Yes, good afternoon, Your Honor.

20   D.J. Camerson, Bressler, Amery & Ross, and I'm joined by

21   Andrew Calica and Jordan Sagalowsky of Mayer Brown on behalf

22   of 3M.

23             THE COURT:  All right.  And then there is another

24   case which is the Group 2 case.  There are a number cases in

25   Group 2 on personal injury, they have different plaintiffs'

1    counsel.  So that this record's clear, can you just enter

2    your appearances, plaintiffs' counsel in the Group 2 cases?

3              MR. LAKIND:  Good afternoon, Your Honor.  Arnold

4    Lakind of Szaferman, Lakind, Blumstein & Blader on behalf of

5    the plaintiffs in the Group 2 cases.

6              MS. PHILLIPS:  Good afternoon, Your Honor.  This is

7    Vicky Phillips of Phillips & Paolicelli on behalf of the same

8    plaintiffs.

9              MR. CONWAY:  And Kevin Conway of Cooney & Conway,

10   also on behalf of the Group 2 plaintiffs.

11             MR. LUBECK:  And Michael Lubeck, also of Cooney &

12   Conway on behalf of the Group 2 plaintiffs.

13             THE COURT:  All right, thank you.

14             To save time, I'll just note for the record the

15   Solvay counsel are the same in the Group 2 cases as in the

16   other ones.  There's Arkema --

17             MR. SHUFTAN:  Correct.

18             THE COURT:  -- E.I. duPont, 3M.

19             Is there anybody else on the phone that hasn't yet

20   entered an appearance?

21        (No audible response)

22             THE COURT:  All right.  Hearing nothing, let's just

23   go right in order and address first Groups 1, 3 and 4 that

24   are currently in settlement mode.  I did receive the letters

25   that were filed in connection with the status of those

1    settlements -- although, Ms. Friedman, you've changed firms I

2    see, correct?

3            MS. FRIEDMAN:  I have, Your Honor.

4            THE COURT:  All right.  Thank you.

5            Now, those -- those letters were not placed on the

6    docket because they're confidential settlement letters, but

7    copies on all counsel as to the status.  And it appears to

8    me, there's really nothing for the Court to address other

9    than scheduling a call after April 10th.

10           MS. PARKER:  Your Honor, this is Crystal Parker for

11   Solvay.  That's -- that's correct, at least from Solvay's

12   perspective.

13           MS. FRIEDMAN:  And, Your Honor, this is Shauna

14   Friedman.  I think after the April 10th deadline, I think it

15   would be appropriate for the Court and the parties to

16   respectfully consider possibly making that an in-person

17   conference, depending on I guess progress of those

18   discussions.

19           THE COURT:  Well, I'm probably going to do that.

20   It won't be April 10th, but it will be sometime in April,

21   we'll have an in-conference for Groups 1, 3 and 4 to address

22   the status of settlement and where we go from here, okay?

23           UNIDENTIFIED SPEAKER:  Yes, Your Honor.

24           MS. FRIEDMAN:  Thank you, Your Honor.

25           THE COURT:  I just say --

1          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

2          THE COURT:  -- the status of settlement -- the

3     status of settlement discussions, not that we won't have on

4     the record any time right now whether there's a settlement.

5     But you keep proceeding, and hopefully you'll be reporting

6     that to me, all right?

7          MR. KURZWEIL:  Your Honor, consistent with me

8     taking out the calendar the last time we were before you, if

9     there's any possibility of avoiding the 11th -- the week of

10    the 11th and the 17th, meaning the week of the -- the week of

11    11th and on April 17th, that would help a 44-year marriage.

12         THE COURT:  Well, I would not want to be the one to

13    disrupt that so certainly I'm sure a lot of people may be off

14    that week too.  There's a lot of spring breaks with people

15    with children.

16         MR. KURZWEIL:  And --

17         THE COURT:  So --

18         MR. KURZWEIL:  -- thank you.

19         THE COURT:  -- why -- why don't --

20         MR. KURZWEIL:  -- Your Honor, this is Lanny

21    Kurzweil.  Also if Your Honor could avoid February the 27th

22    and 28th, it's our annual partner retreat off-premises for

23    business purposes, so Ryan and I -- Mr. Richman and I will be

24    traveling.

25         THE COURT:  April 27th and 28th to avoid, right?

1           MR. KURZWEIL:  Thank you, Your Honor.  That is

2    correct, Your Honor.

3           UNIDENTIFIED SPEAKER:  But so I would question Mr.

4    Kurzweil, those are the dates that I'd like Your Honor to

5    take to avoid (inaudible - phone interference) with me.

6           THE COURT:  Well, we'll try to accommodate

7    everyone's schedule and if for whatever reason we make a

8    mistake, just let us know and we'll resolve it.

9           MR. KURZWEIL:  Thank you, Your Honor.

10           UNIDENTIFIED SPEAKER:  Thanks, Your Honor.

11           MR. KURZWEIL:  Thank you, Your Honor.

12           THE COURT:  All right, that was easy.

13           Let's move to Group 2 where I have a much bigger

14    pile.  So the Group 2, thank you for the detailed letters and

15    let's see if we can reach agreement or know what we're doing.

16    I'll start -- I have a list of a number of items, let me

17    start with the following statement.  Depositions have to

18    begin, and I'm not going to defer depositions because other

19    records, given the amount of medical records that the

20    defendants requested from these plaintiffs, because not every

21    medical record has been produced.

22           If you have recent medical records, you should be

23    able to go forward.  If it turns out to be some unusual

24    medical record that would require the reopening of a

25    deposition, I'll revisit that issue and consider it.  But I'm

1    not going to just say okay, we'll give you another month to

2    start scheduling depositions because you don't have all the

3    medical records.

4              So that being said, let's -- let's start with the

5    expert list, and I have that in front of me.  What -- what am

6    I to do with this list?  What are the parties' positions now

7    that the list has been sent?  And this is in response to --

8    let me just get the handout here -- I guess I'll start with

9    McCarter & English counsel.

10             So, Mr. Richman, are you going to be addressing

11   that?

12             MR. RICHMAN:  Yes, Your Honor.  So we compiled a

13   list per Your Honor's instructions at the last conference

14   that fell into certain categories.  As you can see, it's, you

15   know, quite extensive.  There's about 130-or-so entries on

16   here and we -- we submitted a submission to Your Honor

17   explaining the criteria that went into the list, which was

18   also -- plaintiffs' counsel had input on and we had many

19   conferrals about that leading up to drafting this list.

20             Our, you know, position is -- hasn't -- hasn't

21   changed since we submitted our January 24th letter.  We still

22   believe that expert reports and expert depositions from other

23   litigation, particularly those that do not arise out of

24   Chambers Works, which is the facility that's at issue in New

25   Jersey in plaintiffs' complaints in this case, all these

1    other cases arise out of either the Washington Works plant in

2    Parkersburg, West Virginia or are cases are where allegations

3    of products being sold into the State of New York.  So we --

4    we don't believe plaintiffs met their burden that these cases

5    in any way are substantially similar to the cases that we

6    have at issue here.

7         We haven't -- we've extensively looked at the cases

8    cited by -- by plaintiffs and the case they primarily rely on

9    which is the <u>Hall</u> case, you know, that -- that does not

10   relate to expert discovery.  That case relates to fact

11   discovery from other cases that were substantially similar

12   and that may overlap, not expert discovery.

13        There's nothing that plaintiffs cite that supports

14   the proposition that they can get expert reports and expert

15   deposition transcripts from other -- from other litigation

16   while we're in fact discovery.  To the extent we're going to

17   name one of these defendants -- I mean one of these experts

18   on this list as an expert in our case, you know, at this

19   point that's premature.

20        But if -- if we do, you know, then plaintiffs may

21   be entitled to -- to some additional information and -- and

22   prior testimony and reports from these experts, but at this

23   point it's premature while we're still in fact discovery and

24   we, you know, haven't even taken depositions -- fact

25   discovery depositions yet.

Colloquy                                        14

1          THE COURT:  Okay.  So you have the list but you're

2    not prepared to produce -- that's in the court order these --

3    any of these reports, is that the summary of your position?

4          MR. RICHMAN:  Yes.  Yes, Your Honor, and I -- you

5    know, I don't want to belabor it, I'd -- I'd refer the Court

6    to our January 24th letter which is Docket Entry -- in the

7    Kimberly Bond case it's Docket Entry 290.

8          THE COURT:  Okay.

9          Who from plaintiffs' counsel will be responding?

10         MR. LAKIND:  Your Honor, it's Arnold Lakind.  Your

11   Honor, our position was set forth in our January 17th letter

12   in which both the Third Circuit and several other Circuit

13   Courts have acknowledged the benefits of collaborative

14   efforts in order to ensure a speedy and expensive -- and

15   inexpensive and efficient resolution of litigation.

16         The reports that we asked for and that were agreed

17   upon to study essentially dealt with the -- the three

18   chemicals at issue in this matter.  It dealt with diseases at

19   issue in this matter.  And it dealt with the substance of

20   legal issues -- toxicology, epidemiology, causation, state of

21   knowledge and punitive damages, so all of the information we

22   seek is unquestionably relevant.

23         The notion that the fact that these cases arose out

24   of different facilities is irrelevant to whether or not this

25   information is discoverable.  Neither toxicology,

1    epidemiology, causation, state of knowledge and punitive

2    damages do not depend on the fact that these cases -- the six

3    cases they've cited arose other than at Chambers Works.  So I

4    would respectfully submit since the reports are the same

5    types of reports we will submit, since the diseases are the

6    same within class diseases that are involved in our cases,

7    since the issues are the same, we're going to have the same

8    <u>Daubert</u> issues as were resolved in these cases, so they're

9    unquestionably relevant.

10           Yesterday I posed to defendant, I said if your

11   concern is burden, give us the number of how many reports

12   you'd be willing to give us in order to address the burden

13   issue, and they said zero.  So, Your Honor, based on

14   <u>Cipollone</u> and both the Circuit Court cases we cited in our

15   January 17 letter, I would submit that we are entitled to

16   copies of these export reports --

17           THE COURT:  Okay --

18           MR. LAKIND:  -- and the depositions of these

19   experts which I -- which defendants acknowledge they -- they

20   neglected to include in the spreadsheet.

21           THE COURT:  So let me ask this question.  How many

22   of these experts have testified in a -- if at all, at trial

23   in any of these cases that were pending in the Southern

24   District of Ohio?

25           MR. RICHMAN:  Your Honor, I -- this is Ryan

1    Richman, I do not have that information readily available at

2    my fingertips.  I -- I can get that for you.  I do know that

3    some of these experts have testified, at least in a discovery

4    deposition capacity.  There are also a number of them who

5    have not been deposed yet in these cases.  And the -- the

6    reason why I don't have it at my fingertips, Your Honor, is

7    we're not counsel of record for the Hoosick cases or the Ohio

8    MDL cases, but I can -- I can get that information for you

9    pretty quickly now we have the -- the chart together.

10            THE COURT:  Okay.  And let me just understand the

11   defendants' objection.  Your objection is that it's not

12   relevant?  That's your objection?

13            MR. RICHMAN:  I mean, that's -- that is part of our

14   objection, that it's -- you know, part of our objection is

15   it's -- it's not -- you know, cases that arise out of a

16   facility that's not Chambers Works is not relevant, there's

17   other environmental factors that arise out of operations at

18   other facilities and other outside environmental factors in

19   Ohio or New York or Parkersburg, West Virginia, and I don't

20   think plaintiffs' met their burden of -- you know, in the

21   cases they do cite of establishing that they're entitled to

22   this discovery.

23            Also, you know, we -- we did make a burden argument

24   and as, you know, we stated in our letter, it was -- you

25   know, it took some time and was quite burdensome to even put

1    this list together and, you know, I know -- I know

2    plaintiffs' -- plaintiffs' counsel, Mr. Lakind, just

3    mentioned that on a conferral he asked us, you know, if from

4    a burdensome perspective, how many we'd be able -- we'd be

5    willing to provide to him.  And I -- I put the question back

6    to him and said well, you know, as you can see on this list,

7    there are multiple, you know, experts who are across several

8    cases so, you know, are there any in here that -- that you

9    would -- you would limit it to, and we didn't get a response

10   on that yet.

11         THE COURT:  All right.  Let me just see if I can --

12   and I don't want to spend a lot of time on this issue, the

13   papers have been submitted and I'll, you know, decide if I'm

14   going to read an opinion into the record at our next

15   conference or shortly issue an opinion, but I want to

16   distinguish between plaintiffs' experts and defendants'

17   experts.  So is there a distinction (inaudible -- phone

18   interference) that, and I'll start first with Mr. Lakind.

19         MR. LAKIND:  Your Honor, I -- I would think not.

20   First, with regard to plaintiffs' expert, since we will have

21   the same or similar experts, that information, it is strictly

22   relevant and -- relevant to us, and it will identify

23   information in defendants' discovery that we -- that may not

24   have been provided to us and it will help us with Daubert.

25         With regard to defendants' experts, the use of

1    those expert reports will differ a bit.  However, it will

2    facilitate a more efficient conduct of the litigation because

3    we'll have a sense of what their objections are to the

4    different experts both on Daubert grounds and on substantive

5    grounds, and they may have exculpatory explanations,

6    especially with regard to punitive damages and state of

7    knowledge with regard to certain documents that we think are

8    inculpatory, so I -- I would submit that there is no

9    difference for purposes of our request between the two

10   categories of experts.

11         I do think in response to Mr. Richman's question,

12   we could limit the expert reports we're looking for to one

13   version.  I mean, of the 140, about 102 of them are -- are

14   duplicated, so we -- we just need one version of the reports

15   and the most current version, and not certainly 140 or 150.

16         THE COURT:  Well, what do you mean by that?  Like,

17   for example, each of these cases has the same expert and you

18   just need the last report of that expert?

19         MR. LAKIND:  Yes, Your Honor.

20         THE COURT:  And so when you do that math, you get

21   down to how many expert reports?

22         MR. LAKIND:  38.  I may be wrong by one or two

23   because I had to do it by hand because we couldn't sort it, I

24   didn't -- I didn't have the ability to do that, but it would

25   be between 38 and I suspect 40, Your Honor.

Colloquy                                    19

1          THE COURT:  Okay.  All right.

2          Any response from the defense as to whether there's

3    a distinction between requesting expert reports produced by

4    the defendant and/or expert -- and expert reports produced by

5    plaintiffs in these other cases?

6          MR. RICHMAN:  Yes, Your Honor, this is Ryan

7    Richman.  So I -- I think plaintiffs' reports from these

8    other cases which -- which we did list per Your Honor's

9    instructions, are even further removed from a -- from a

10   relevancy standpoint.  These are, you know, plaintiffs in

11   other cases who had their own medical issues who were exposed

12   to, you know, or claiming they were exposed to contaminants

13   from other parts of the country.  They do not relate in any

14   way to exposure to anything from Chambers Works, which is

15   what this case is about.

16         And, you know, plaintiff claims that they have some

17   of these reports already.  We've asked them to disclose to us

18   which ones, but we have not received a response to that yet.

19   I'm not -- I'm not sure what Mr. Lakind means when he says it

20   will help him with respect to Daubert.  I don't think that's

21   a relevant inquiry to the -- to this.

22         And then additionally, these -- the plaintiffs'

23   reports aren't, you know, duPont and Chemours's reports to

24   produce.  These were issued by plaintiffs' counsel in other

25   cases.  I -- I don't know what conversations or not Mr.

Colloquy                                      20

1    Lakind's had with any of those, and there may be

2    confidentiality concerns for us based on the operative

3    protective orders that are entered in those cases.

4              THE COURT:  Okay.

5              Any response?

6              MR. LAKIND:  Yes, Your Honor.  With regard to

7    confidentiality, our confidentiality order anticipates that

8    there will be documents produced from other cases and that --

9    and the confidentiality provisions of our order will govern.

10              With regard to the implications of this not being

11   out of Chambers Works, issues such as state of knowledge,

12   punitive damages, causation, epidemiology and toxicology are

13   not facility-dependent, so I don't think that really

14   (inaudible -- phone interference).

15              Also, with regard to Daubert, one of the -- two of

16   the experts I believe on the list -- one for certain, Savitz,

17   was the subject of a Daubert hearing in a case called Baker

18   vs. Saint-Gobain, which you'll note is not on the list, but

19   we would then get a sense from reading both the plaintiffs'

20   and defendants' reports, then we could look at the decisions

21   how the Courts dealt with the Daubert issues for them, and

22   that would guide us as to the intensity of the work we need

23   to do and make the Court's job more efficient because it

24   would have before it Daubert -- excuse me, experts that were

25   already considered under the Daubert standards.  So that's

1   why I mentioned Daubert.

2           MR. RICHMAN:  Your Honor, may I respond to that

3   briefly?

4           THE COURT:  Sure.

5           MR. RICHMAN:  So while our discovery

6   confidentiality order may -- may -- and I think it does

7   address voluntary reproductions from -- from other cases --

8   you know, that parties need in other cases, that's -- that's

9   not this situation.  What I was referring to is we still have

10  an obligation to comply with the protective orders in those

11  cases regardless of -- of what our discovery confidentiality

12  order may say here as to voluntary reproductions from -- you

13  know, on discovery from other -- from other cases.

14          And as -- as -- and, you know, Mr. Lakind also

15  mentioned punitive -- punitive damages.  I'd just like to add

16  that -- and, you know, as Your Honor knows, punitive damages

17  are -- are very circumstance and fact-sensitive, and I'd --

18  I'd argue that those are -- you know, the -- the furthest

19  removed from any sort of relevancy to plaintiffs' places in

20  -- plaintiffs' claims in these cases.

21          THE COURT:  All right.

22          Anything further?

23          MR. LAKIND:  No, thank you, Your Honor.

24          THE COURT:  All right.  So I'm going to just

25  reserve on this issue and let's move to the next one, and as

1    I said, I'll either issue an opinion from the bench instead

2    of a call, or I will issue a written opinion on this issue.

3         Let me go through a couple quick items and then

4    we'll get to the outstanding 30(b)(6) issues and topic issues

5    and interrogatory issues.

6         The deposition of Richard Bond, Sr., is that

7    resolved now?

8         MS. PHILLIPS:  Your Honor --

9         MR. RICHMAN:  Your Honor --

10        MS. PHILLIPS:  -- I think it's -- oh, go ahead.

11        MR. RICHMAN:  No, go ahead, please, please.

12        MS. PHILLIPS:  Sure.  This is Vicky Phillips for

13   plaintiffs.  We have made progress on the issue even since --

14   even since we submitted the letter.  One of defendants'

15   objections had been that they were waiting for a doctor's

16   note.  We just today -- it took -- there were some

17   administrative hiccups with the doctor's office, but we did

18   get a note attesting to Richard's -- the need for an in -- in

19   extremis deposition and the many life-threatening illnesses

20   that he suffers from and we've provided it to defendants I

21   think mere minutes ago.

22        We've confirmed that he cannot do depositions

23   Monday, Wednesday or Friday and suggested half-day

24   depositions on Tuesdays and Thursdays because he has dialysis

25   three times a week.  I think defendants just wrote back with

1    three dates that would be agreeable for them and we'll

2    confirm with the Bond family, but I think we should be able

3    to tee that up.  And they did object -- you know, given the

4    family's illnesses, it took some time to get discovery

5    responses -- I guess further responses from Richard Bond,

6    given that he'd already done them in connection with daughter

7    Chrissy's case.

8         We did just give them interrogatory responses to

9    the joint interrogatories of all defendants.  We also just

10   provided responses to the discovery demands of duPont's

11   request for production and I think -- I think we indicated in

12   the letter, but we're agreeable, the defendants would like to

13   have complete deposition -- discovery responses by April

14   13th.

15        I think we can likely get that done, and that would

16   be in advance of the deposition dates that they've

17   identified.  Realistically we don't think there are going to

18   be additional document production because Richard and his

19   wife Kim provided documents in connection with their

20   daughter's case, so we appreciate that we need to do the

21   formality of going through the motions and we will, but --

22   but they likely have in hand all the documents that they're

23   going to get because these plaintiffs already responded to

24   discovery once before, and in fact, supplemented after we met

25   and conferred with defendants several months ago --

1      THE COURT:  What is the --

2          MS. PHILLIPS:  -- so that's --

3      THE COURT:  -- (inaudible - phone interference) the

4   deposition?

5          MR. RICHMAN:  Your Honor, may I be heard on this?

6      THE COURT:  Yes.

7          MR. RICHMAN:  This is -- this is Ryan Richman, Your

8   Honor.  We've been operating under the principle that Mr.

9   Bond, Sr. had to go first in deposition sequencing, given

10  plaintiffs' representations that he was in extremis and had a

11  recent surgical procedure, and to accommodate the plaintiffs,

12  we suggested moving forward with Mr. Bond, Sr. first and

13  plaintiffs did not object.

14      We also proposed moving forward with three specific

15  Group 2A plaintiffs after Mr. Bond, Sr.  We based our

16  selection of these additional three plaintiffs to go after

17  Mr. Bond largely on the status and medical records collection

18  and where defendants -- you know, the defendants felt would

19  be least prejudiced.  We've asked our -- we've also asked our

20  vendor to prioritize the remaining medical record collection

21  for the four plaintiffs.

22      But we initially on March 9th shortly after our

23  last conference provided all of defendants' availability for

24  the deposition of Mr. Bond.  We also asked for a letter from

25  Mr. Bond's physician supporting the need for an in extremis

1   deposition due to his medical condition, his written

2   discovery responses and his surgical records from his recent

3   surgery.  On March 16th the defendants followed up on Mr.

4   Bond, Sr.'s deposition and the request for the letter, the

5   written discovery and the surgical records.  We also asked

6   plaintiffs to provide availability for the depositions of the

7   three other plaintiffs, Kimberly Bond, Richard Bond, Jr., and

8   Nicole Bond.

9         On March 21st we followed up again on Mr. Bond's

10  availability and we received an email from plaintiffs'

11  counsel yesterday afternoon advising that Mr. Bond, for the

12  first time, is unavailable on Mondays, Wednesdays and Fridays

13  due to his medical treatment, which is totally

14  understandable, and so the deposition would have to be

15  scheduled on Tuesdays or Thursdays.

16        We also received a list of dates for some other 2A

17  plaintiffs, but they did not include two of the three that we

18  had asked for, and we still have not received Mr. Bond, Sr.'s

19  surgical records.  As Ms. Phillips said, you know, about five

20  minutes or so before this conference, we did receive a letter

21  from Mr. Bond's physician.

22        We're obviously still -- still reviewing it and

23  haven't had a lot of time to -- to review or think about it,

24  but my initial reaction to it is it didn't seem to indicate

25  anything imminent that would require preserving his trial

Colloquy                          26

1   testimony now, but we're -- we're still prepared to move

2   forward with doing his fact deposition first.  In response to

3   the letter or the email that we received yesterday afternoon,

4   we provided three new dates for Mr. Bond's deposition today

5   and we're waiting to hear back on his availability.

6          THE COURT:  Okay.  This is supposed to be the easy

7   issue, so I really don't want to spend much more time.  We

8   need to get the deposition done.

9          I understood from plaintiffs' counsel that the

10  three dates have been provided -- that have been provided

11  were acceptable.  Am I correct?

12         MS. PHILLIPS:  I think they're likely acceptable.

13  We got them a couple of minutes ago, so I -- I will check

14  with my clients just to confirm, but I -- I suspect -- and

15  we're looking for two days out of the three, I suspect we can

16  make two of them happen and we can get back to them shortly

17  on that.

18         THE COURT:  All right.  And then the other

19  plaintiffs have to start being deposed, so you just have to

20  take them.  There's no reason that you have to take Mr. Bond

21  first or last.  I understand that there's this issue with his

22  condition, but we need to start taking other deps.  There's a

23  lot of plaintiffs in these cases so we can't just wait --

24         MS. PHILLIPS:  And --

25         THE COURT:  -- until everything --

1             MS. PHILLIPS:  And --

2             THE COURT:  -- is solved on one before we schedule

3    a second one.

4             MS. PHILLIPS:  And, Your Honor, if I could on that

5    issue, we actually have provided three possible dates each in

6    April and May for Theresa Slusser and William Slusser,

7    they're Alex Slusser's parents; Tammy O'Leary; Corby Deese;

8    Carly Corrar; Shirley Bond and also Kimberly Bond, who's

9    Chrissy's mom but also has a case of her own.

10            Given what Your Honor said about medical records

11   and I'd -- and I'd be shocked if the defendants didn't have

12   substantial medical records for all of these people, these

13   are the first in time filed cases to my understanding.

14   They're also cases in which we served discovery responses

15   months ago, supplemented after conferring with defendants,

16   and that's why we got dates for those plaintiffs.

17            So they seem to be focusing on plaintiffs who were

18   later in time filed, and we can look into dates for them too,

19   but they've go three dates each in April and May for these

20   people and we'd like to schedule them.

21            THE COURT:  Let me --

22            MR. RICHMAN:  Your Honor --

23            THE COURT:  Wait.  Let me just make sure I

24   understand.  You've provided more than three days, right?

25   You have lots of dates for -- that draw up April and May or

1    fall within April and May for a number of people.  Did I --

2    did I understand that right or --

3              MS. PHILLIPS:  Exactly.

4              THE COURT:  -- or only --

5              (Inaudible - multiple speakers)

6              MS. PHILLIPS:  Yeah, I should have been clearer.

7    For -- so for each person, I think we provided three dates

8    for one, two, three, four, five -- seven different

9    plaintiffs --

10             THE COURT:  All right.

11             MS. PHILLIPS:  -- so --

12             THE COURT:  So I'm looking at my February 28th hard

13   letter and I pretty much said, you've got to start taking

14   these depositions.  So I don't know what -- defense, else

15   they want to say, but they need to start taking depositions.

16   I've already indicated there's some medical records that you

17   didn't get and then we're going to get to the education

18   records and the employment records, but if there's something

19   that you didn't get that really impacts the case in a way

20   that would require a re-deposition, I'll revisit the issue.

21   I'm not saying you can never retake it.

22             But we need to start taking depositions so I don't

23   know what else defense wants to say on this issue, but it's

24   time to get them scheduled, and I think I was pretty clear

25   that you needed to get them started in March and now we're

Colloquy                    29

 1    going to be into April and we still don't have the deps done.

 2          MR. RICHMAN:  Your Honor, it's Ryan Richman.  We

 3    totally understand, you know, your -- your frustrations.

 4    We're -- we're also frustrated.  I mean, we just received

 5    these dates yesterday and like -- like I said, we had -- we

 6    had asked for these three additional specific plaintiffs

 7    because they were the furthest along in medical record

 8    collection and we felt we'd be the least prejudiced if we

 9    started with them.

10          You know, for example, one of the -- two of the

11    names I heard Ms. Phillips mention were William Slusser and

12    Carly Corrar, and they only have about 25 percent of the

13    records collected.  So we were --

14          THE COURT:  Well --

15          MR. RICHMAN:  -- we were prioritizing the other

16    three and we still have not received dates for two of them,

17    but we will confer -- you know, we hear Your Honor loud and

18    clear and we'll confer with -- with plaintiffs' counsel after

19    this and get those on the calendar.

20          THE COURT:  I'm sorry if it sounds like I'm

21    frustrated, I'm not, I just want to make sure that you know

22    that you've got to get done.  You know, I can't -- I can't

23    wait for all the records.  So, you know, work it out and send

24    me a letter by next Friday of what depositions are going to

25    be done for the month of April.  Okay?

1          MR. RICHMAN:  Okay.

2          MR. CONWAY:  Your Honor, it's Kevin Conway.  If I

3     might add, as of March 27th, I think they've had 494 sets of

4     medical records and we've been turning around medical

5     authorizations extremely quickly for them, so it's not --

6          THE COURT:  Okay.

7          MR. CONWAY:  -- believe me, there've been --

8     there's been a lot of diligence on the plaintiffs' side as

9     far as records go.

10         THE COURT:  I'm not attributing any fault to

11    anybody.  I'm just saying we have to move forward.  And I

12    understand that parties want to have every document that they

13    can before the deposition, but in a case like this, given the

14    extent of the medical records that have been requested, it's

15    time to -- to move forward with depositions.

16         It's always --  like I said, I would always revisit

17    it if something came in that would warrant an additional

18    deposition and Mr. Richman said, you know, he's trying to

19    schedule the ones where he has less -- less likelihood of

20    that where there's, you know, a significant production, so

21    work it all out.

22         I'm sure you all can, and just send me a letter on

23    next Friday as to the depositions that are scheduled --

24    scheduled for the months of April and May and what is still

25    holding back scheduling others.  Okay?

Colloquy                                31

1              MS. PHILLIPS:  Thank you.

2              MR. RICHMAN:  Yes, Your Honor, thank you.

3              THE COURT:  All right.  And that leads me to the

4    issue that I wasn't quite sure was a problem, and that's the

5    other records that apparently are being requested, and I

6    guess the question is the employment and educational records.

7    I'm not really sure what it is that's outstanding and why

8    that has an impact on taking a deposition.

9              More times than not, you don't ask for educational

10   records, so I'm not really sure why that's in a personal

11   injury case so I'm not really sure why that's being

12   requested.  And employment records -- I guess if there's a

13   lost wage claim, but otherwise, what is it that you need from

14   the employment records that you couldn't get at a deposition?

15             MR. RICHMAN:  Your Honor, this is Ryan Richman.  We

16   did receive their employment record authorizations I believe

17   in the past few days or so and -- and we're collecting those

18   records, but we're not -- you know, we're not -- we're not

19   holding up the depositions because of that.  I think there's

20   only two additional outstanding authorizations and I -- I

21   think that plaintiffs have committed to giving those two to

22   us.

23             And, I mean, we believe those -- those records are

24   -- are relevant to plaintiffs' claims because they've made --

25   you know, there's some plaintiffs who have birth defect

1    claims; there's some plaintiffs who are alleging some

2    conditions that go directly to the relevancy of their, you

3    know, ability to work and their -- their ability to attend

4    school and their academic records, so that's why we believe

5    they're relevant.  Plaintiffs have not objected to providing

6    them to us, we just, you know, didn't -- didn't receive them

7    until recently.

8              THE COURT:  Okay.  Well like I said, a lot of what

9    you may be requesting you can find out at a deposition.  If

10   the authorizations aren't there yet or records aren't there

11   yet and then if there's something that would create the issue

12   that would create the need to have a re-deposition for an

13   hour or two, you know, we can address it.  But don't have

14   that be a delay for taking depositions.  I mean, if --

15             MR. RICHMAN:  I --

16             THE COURT:  -- okay?

17             MR. RICHMAN:  Understood.

18             THE COURT:  All right.  All right, now let me just

19   get to -- is that it for outstanding records?  I think that's

20   it.

21             You -- the defendants have requested I order

22   plaintiffs to return all outstanding releases and

23   authorizations by April 13th.  Is there an objection to that?

24             MR. CONWAY:  There's not.

25             THE COURT:  I'm sorry, who's speaking on behalf of

Colloquy                                    33

1    plaintiffs?

2            MR. CONWAY:  Kevin Conway.  No, Your Honor, there's

3    no objection.

4            THE COURT:  All right.  I'll put that in the order

5    then.  And also my order will say that by this next Friday --

6    well actually that's -- the Court is closed so we'll give you

7    a little bit more time, but April the 11th the parties shall

8    submit a letter setting forth the number of depositions; who

9    is being deposed in April and May; and what -- what issues

10   are remaining in getting any scheduled depositions and I had

11   asked that you start taking depositions in March.

12           So, you know, I would anticipate that you're going

13   to be taking a number of depositions so I'm not -- I don't

14   want to give you a set number, but let me just say I would

15   expect there to be at least ten depositions in that two-month

16   period -- in that end of April, May period.  Maybe -- maybe

17   more, but at least that.  And if there's a problem with

18   hitting that number you'll let me know.

19           Okay, that's depositions and outstanding records.

20           Let's go to the number -- what I would say is the

21   position by the parties -- I had them numbered, I think it's

22   Number 5 and and Number 6 in the March 27th letter, 2023,

23   Document 306.  So what's the -- what's the problem with the

24   registry?

25           MR. LAKIND:  Your Honor, this is Arnold Lakind.

1      And as we indicated in the letter in September of 2022, we

2      asked for the cancer registry.  DuPont responded that they

3      don't maintain it any longer but there were electronic files

4      that would essentially have all the relevant information that

5      would be in the cancer registry and they proposed to get

6      that.

7              I responded that as an interim measure, sure, let's

8      do that and see if that answers our questions.  We've been

9      going back and forth and then finally in the most recent meet

10     and confer, duPont said they would start the process of

11     getting this information April 7.  And I responded I

12     understand that, but we need a date by which it's going to be

13     completed.

14             We just didn't want to be in a position where we're

15     taking 30(b)(6) depositions and we don't have response to

16     discovery that's seven-months old, so we're just really

17     looking for a date when they're going to give us the -- the

18     results of their electronic discovery efforts.

19             MR. RICHMAN:  Your Honor, this is Ryan Richman.  I

20     don't believe we have a dispute related to the -- you know,

21     we agreed that we would run a supplemental search of ESI and

22     then in an effort to address the extensive requests that we

23     received from plaintiff, we're doing that.  We intend on

24     making our first rolling production -- I think in the letter

25     we said -- we said by April -- April 7th, so I don't -- I

1    don't think there's any -- any outstanding dispute related to

2    that.

3           THE COURT:  Okay.  Well I'll just put the -- I'm

4    going to put the same deadline that you had requested that I

5    put for the plaintiff.  You should complete that, that

6    production -- I don't know why it needs to be on a rolling

7    basis -- by April the 13th.  I mean, it's an ESI search, it's

8    a very limited way in which the search -- at one time it was

9    all compiled, I think is what you said, and no longer, but

10   it's ESI.  I'm sure a couple different searches puts you in

11   the right database to get a printout, so Aril the 13th that

12   production should be completed.

13          And let's go on to the Simmons (phonetic) -- I

14   don't know if I'm pronouncing that -- report.  I don't

15   understand the issue.  If it exists and the defendants know

16   where it is, just send it over to the plaintiff.  What's the

17   problem?

18          MR. RICHMAN:  Well -- Your Honor, this is Ryan

19   Richman -- we have -- we have not yet located this document

20   on -- based on the supplemental ESI search.  We agreed to run

21   to address plaintiffs' cancer registry issues.  We have

22   though advised plaintiff that this is available publicly and

23   suggested that he should Google the name of the report to

24   find it.  It's from a website that's not within my client's

25   control so for various reasons, we don't want to make a

Colloquy                                36

1    production from a website that has this report, but we've
2    advised plaintiff where -- where to find it and we haven't
3    found it in our records yet.  If it is found in this
4    supplemental ESI search, it will be -- it will be in there.
5    But we -- we've advised him where to find it publicly.
6              MR. LAKIND:  Your Honor, that --
7              THE COURT:  Mr. Lakind, did you run the Google
8    search?
9              MR. LAKIND:  I did, and I couldn't find it and they
10   did not tell me where I could find it.  They said put the
11   name into Google, I did.  I came up with an article in the
12   pump-something, but I can't find the actual submission.  If
13   they would just tell me where it is, that would be fine.
14             MR. RICHMAN:  It's -- it's the third hit when I
15   Google it, Your Honor, so I -- I think we can easily resolve
16   this in a quick phone call from me to Mr. Lakind.
17             THE COURT:  Okay.  I'm going to -- I'm going to be
18   optimistic and say it will be resolved, and if not, you can
19   send me a letter by next -- well, by the 11th.  Okay?
20             MR. RICHMAN:  Yes, Your Honor.
21             THE COURT:  By the 13th, I mean.
22             Okay.  All right.  Now let's hear from some other
23   people who have other issues.  Let's get to the 30(b)(6)
24   notice.  I was very happy to see how much you resolved, so I
25   appreciate the efforts that all counsel have made and it's

1    always nice when we see that a number of issues are narrowed,

2    and it looked like you were still working on it so I'm hoping

3    that you're going to tell me that it's all  resolved.

4              Let's -- let's go with -- well, who wants to go

5    first?  Which defendant wants to go first on their concerns

6    about the topics?

7              MR. CALICA:  Your Honor, this is Andrew Calica for

8    3M Company.  We're happy to go first as long as you can hear

9    another voice today.

10             THE COURT:  Well it's not --

11             MR. CALICA:  -- (inaudible -- multiple speakers)

12             THE COURT:  -- it's not that I don't mind hearing

13   from all -- it's not that I don't mind hearing from all

14   counsel, but I will note that you had the biggest issues last

15   time and you --

16             MR. CALICA:  -- (inaudible- multiple speakers) --

17             THE COURT:  -- you had --

18             MR. CALICA:  -- (inaudible - multiple speakers) --

19             THE COURT:  -- (inaudible -- multiple speakers)

20             MR. CALICA:  -- Your Honor.

21             THE COURT:  Okay.  And, and plaintiffs' counsel and

22   you -- your firm were able to narrow it down --

23             MR. CALICA:  Yes.

24             THE COURT:  -- and I'm hoping that we're just down

25   to a few things.  So is it Topic 3, Topic 5, Topic 7 and

Colloquy                                          38

1    Interrogatory 16 and 17 that we have to address?

2         MR. CALICA:  So it's -- it's more than that, Your

3    Honor, but I can report that yesterday Mr. Conway and I had

4    another conferral and we talked about issues Topics 2, 4, 5

5    and 8, and I think we made further progress on those. and we

6    may be on the cusp of coming to ground and we're either going

7    to resolve those issues, narrow them or know that we can't,

8    although I'm optimistic that that third is the least likely.

9    We're -- we've agreed to have another conferral, we're taking

10   -- each taking back a couple of issues and then come back to

11   each other and have one more conferral.

12        My proposal from 3M, Your Honor, would be, there

13   are a couple of topics or parts of topics and related

14   interrogatories on which we probably are not going to reach

15   agreement, but my view I think, Your Honor -- our view would

16   be that it makes sense to put to the Court all those issues

17   at once and so our proposal would be that if we could have

18   time to try to resolve the ones that are left and who knows,

19   maybe even we'll come onto the ones that we think we can't

20   resolve, and then come to Your Honor shortly with whatever

21   remains and either schedule a -- submit a letter, schedule a

22   conference -- teleconference, a Zoom conference, come in

23   person, whoever Your Honor would like to hear argument or --

24   or to receive argument on the papers on whatever issues

25   remain.  But we are continuing, I think, there's a take away

1    to make progress.

2              THE COURT:  Does plaintiffs' counsel agree?

3              UNIDENTIFIED SPEAKER:  Mostly.  There's still one I

4    don't think anybody's -- I don't think they've agreed to and

5    that's the -- regarding the -- you know, the safety

6    precautions and the warnings given to employees.  I don't --

7    I don't think they're -- the only one they're looking at I

8    think as far as employees is the -- whether or not they're

9    going to have to give me the Workers' Comp claims.

10             But as far as all health advisories or health-

11   related warnings regarding 3M chemicals mentioned in this

12   complaint given to 3M employees, I -- I don't think we're

13   revisiting that.  I thought they -- I -- I have "Court should

14   decide" in my notes, and same thing with 7.  You know, in any

15   event, the -- we have met five times on that issue.  As far

16   as I know, there's been no movement.

17             On the others, I think they're -- you know, we are

18   talking, but and that -- that particular question goes not

19   only to those two interrogatories, but partially into other

20   interrogatories.  So I think the Court has to decide that.

21   They're -- they do not want to give me anything that they

22   told their employees or they don't want to give me any safety

23   precautions they took to protect their employees from these

24   chemicals.

25             THE COURT:  Okay.

1           UNIDENTIFIED SPEAKER:  I, of course -- I, of course

2     think that they're very discoverable.

3           THE COURT:  All right.  Let me do this.  Let me ask

4     that 3M and plaintiffs' counsel continue to meet and confer.

5     I have the settlement -- sort of a summary and thank you, Mr.

6     Richman, for your detailed letters about the issue, but I

7     would prefer I think to have counsels' positions by

8     themselves now on what's not able to resolve, so have your --

9     an additional meet and confer and then send me your separate

10    letters and I'll schedule a call the week of probably April

11    13th will be our -- our day, or April the -- yeah, because

12    (inaudible - phone interference) bunch of stuff done, so

13    we'll have a phone call on April 13th and we'll resolve it.

14    Okay?

15          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

16          MR. LAKIND:  Thank you, Your Honor.

17          THE COURT:  But stay on the phone because maybe

18    what I do with respect to duPont and plaintiffs' counsel were

19    informed, so let's -- is that -- that's everything with 3M

20    and then is it -- and, Solvay, you worked it all out, right?

21          MS. PARKER:  This is Crystal Parker for Solvay,

22    Your Honor, yes, we -- we don't have any outstanding issues

23    with plaintiff.

24          THE COURT:  All right.  And who -- who else?  Let's

25    see.

1           UNIDENTIFIED SPEAKER:  It's just duPont, Your

2    Honor.

3           THE COURT:  Just duPont that's --

4           MR. SHUFTAN:  And there was -- there was nothing

5    from Arkema, Your Honor.

6           THE COURT:  Oh, so nothing was Arkema.

7           MR. SHUFTAN:  No.

8           THE COURT:  So that leaves --

9           MR. LAKIND:  Well, I'm not sure, Your Honor, if

10   there's nothing with Arkema or we've come to a attractable

11   position.  I think we need to talk again because I know we

12   didn't address it in the letter and I think that was my

13   oversight, but there was one issue that I think we'd like to

14   talk to them about one more time.

15          THE COURT:  Well, I'm going to resolve whatever

16   hasn't been resolved hopefully on the 13th so you -- if you

17   don't send it until then, then your 30(b)(6) doc notice and

18   the interrogatory issue is done and I would expect that the

19   30(b)(6) depositions will be taken in May.  That's what I

20   expect.

21          MR. LAKIND:  Right.

22          THE COURT:  All right?

23          MR. LAKIND:  Right.

24          THE COURT:  So now's the time to get it done.

25          Let's go to the duPont issues and this is Topics 19

1   and Topics 5 and 20, but I understood that that was still

2   being negotiated and hope to reach an agreement on 5 and 20.

3   Have they?

4            MR. LAKIND:  We have not, Your Honor.  I'm sorry.

5            MR. RICHMAN:  Your Honor, this -- this is Ryan

6   Richman.  We -- we have not on Topic 19 and we -- except for

7   Topic 19 in the letter on page two.  Mr. Lakind and I spoke

8   yesterday and I think what we would propose or what we agreed

9   upon and we would propose to Your Honor is to submit a very

10  short position on Topic 19 and -- and have Your Honor call

11  it.

12           THE COURT:  Okay.  It's -- it's very -- well before

13  I get to that, what about the other topics?

14           MR. LAKIND:  Your Honor --

15           THE COURT:  I thought you agreed on 5 and 20.

16           MR. LAKIND:  I think we agreed that the resolution

17  of 19 would drive 5 and 20.  We agreed on certain parts of 5

18  and 20, but we think the resolution of 19 will -- will drive

19  the resolution of 5 and 20.

20           THE COURT:  Okay.  So you want to submit a short

21  letter submission and setting forth your positions and what

22  other case law you have?

23           MR. LAKIND:  Yes, Your Honor.

24           THE COURT:  Okay.  When can you guys get that so we

25  can get it all resolved hopefully on the 13th?

1           MR. RICHMAN:  Maybe with the submission on April --

2    or we could do it separately on April -- it sounds like

3    there's going to be a deadline on April 11th for a

4    deposition, so we could perhaps do it then, Your Honor.  And

5    just for the record from out position, we -- we believe

6    Topics 5 and 20, we -- we conferred a lot on this, Your

7    Honor, and we made proposals and we thought we had reached

8    agreement, but we'll -- we'll confer with Mr. Lakind again

9    before we make that submission.

10          THE COURT:  Okay.

11          Is that acceptable, Mr. Lakind, that deadline?

12          MR. LAKIND:  It is, Your Honor.  Yes, it is, Your

13   Honor, thank you.

14          THE COURT:  All right.  So April 11th and to the

15   extent I misspoke and said it was April 13th, April 11th is

16   the deadline that you will provide me the dates of the

17   depositions, who's being deposed.  And April 11th will also

18   be the deadline for all the parties that want to submit to me

19   letter submissions concerning the remaining topics at issue

20   or interrogatory answers or issues, you should submit it, any

21   case law cite to it, and then I will have another conference

22   call on April the 13th probably at 1:30 and that's not on the

23   list of dates I had to avoid, is it?  Let me see --

24          MR. SHUFTAN:  Yes, Your Honor.

25          THE COURT:  -- somebody has a bad time on that

```
 1    date.  Who's not good on April 11th?

 2              MR. SHUFTAN:  Thank you, Your Honor.

 3              THE COURT:  Which counsel is --

 4              MR. SHUFTAN:  This is Robert Shuftan on behalf of

 5    Arkema, Your Honor.

 6              THE COURT:  Okay, but you're not in this issue so

 7    is there a reason why I can't have the call?  You can have a

 8    colleague attend?

 9              MR. SHUFTAN:  Absolutely, you can have this and

10    have another colleague attend and we're not aware if there is

11    an issue with Arkema.  If Mr. Lakind's going to let us know

12    the position he has, we'll certainly meet and confer with

13    him.

14              THE COURT:  All right, thank you.

15              All right, and then --

16              MR. RICHMAN:  Your Honor --

17              THE COURT:  -- the call --

18              MR. RICHMAN:  -- did you state the 13th at 1:30,

19    just to clarify?

20              THE COURT:  Yes --

21              MR. RICHMAN:  Okay.

22              THE COURT:  -- April 13th at 1:30.  Now, that's not

23    for Groups 1, 3 and 4 where we're going to actually have an

24    in person and talk about settlement, that will work around

25    your schedule, Mr. -- is it Shuftan?
```

1          MR. SHUFTAN:  Yes.  And, thank you, Your Honor.

2          THE COURT:  All right.  Okay.  Well, I do think

3    we're done.  Am I missing anything?

4          MR. CALICA:  Your Honor --

5          MR. LAKIND:  Your Honor --

6          MR. CALICA:  Go ahead, Mr. Lakind.

7          MR. LAKIND:  Thank you.  Your Honor, it's Arnold

8    Lakind.  I -- I took the liberty while we were speaking to

9    try and Google again Burrell (phonetic) Simon (sic) and came

10   up empty.  I'm just wondering if April 11th could be a

11   deadline too to get us some information where we can find

12   that or the report itself.

13         THE COURT:  I think Mr. Richman's going to call you

14   right after this conference and walk you through the Google

15   that he says is easy to do.  Is that right?

16         MR. RICHMAN:  I can do that, Your Honor.

17         THE COURT:  Okay.

18         MR. LAKIND:  Okay, thank you.

19         MR. CALICA:  Your Honor, Andrew Calica for 3M.  If

20   I might make a suggestion but obviously I'd defer to Your

21   Honor, for the Group 1, 3 and 4 conference, it sounds like

22   there may be different conflicts on different dates for

23   different attorneys and I have some that may be in between

24   those, so might I suggest that the parties confer and prep,

25   suggest several dates to Your Honor that might work or --

1          THE COURT:  I think that's an excellent idea, yes,

2     please do so.

3          MR. CALICA:  Thank you.

4          THE COURT:  Okay, anything else?

5          MR. LAKIND:  Not from plaintiffs, Your Honor.

6          MR. RICHMAN:  Not from defendants, Your Honor,

7     thank you.

8          THE COURT:  All right, thank you, counsel, for

9     everything that's been submitted.  I do appreciate all the

10    thoroughness that everyone submits their letters and the

11    detail, it is very helpful to the Court, and have a nice day.

12    We are adjourned.  Thank you.

13          ALL COUNSEL:  Thank you, Your Honor.

14              (Proceedings concluded at 3:01 p.m.)

15                          *  *  *

16

17

18

19

20

21

22

23

24

25

1                         **C E R T I F I C A T I O N**

2

3                         I, Diane Gallagher, court approved

4       transcriber, certify that the foregoing is a correct

5       transcript from the official electronic sound recording of

6       the proceedings in the above-entitled matter.

7

8

9       ____/s/Diane Gallagher____              ____April 7, 2023____

10      DIANE GALLAGHER                         DATE

11      DIANA DOMAN TRANSCRIBING, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25